## Great Atlantic & Pacific Tea Co. v. City of Lexington.

(Decided Dec. 4, 1934.)

CARROLL & McELWAIN for appellant.

J. PELHAM JOHNSTON and CLINTON M. HARBISON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

Appellant, the Great Atlantic & Pacific Tea Company, sued the appellee to recover $2,106.20 paid during the period of five years from 1927 to 1931 as a license tax for the privilege of selling cigarettes in its several groceries in Lexington. There was no ordinance levying or requiring payment of such tax.

The payments were made under these circumstances: In preparing to add cigarettes to its stocks of merchandise in 1927, an officer of the company wrote the city clerk making inquiry about the matter of a special license, and he advised that there was such a license of $35 for each store. Remittance for eleven stores was accordingly made for the proportionate part of that year, the check being indorsed to show its purpose. Thereafter remittances were made for the aggregate licenses for the company's several stores. The checks bore on their face, "Renewing city grocery and cigarette licenses." These were indorsed, first, by the city clerk and then by the commissioner of public finance, and went into the city's treasury in due course. This was continued annually until February 19, 1932, when the remittance was returned by the city treasurer with the advice that there was no license due for the sale of cigarettes in groceries. The agreed statement of facts upon which the trial was had contained, among others, these stipulations:

"Plaintiff had been operating grocery stores in the city of Lexington for a number of years prior to 1927, and had paid each year to said City license taxes for the privilege of conducting said business; and it was advised and knew that penalties might be imposed on those who conducted any business in said City, on which a license tax was imposed, who

failed to pay said taxes, and it knew that failure to pay license taxes subjected the offender to liability for fines and other penalties.

"Plaintiff believed that if it failed to pay same it would be subject to fines and other penalties. Plaintiff had gone to large expense in purchasing cigarettes to be sold in its stores in the City of Lexington and would be unable to sell same if it failed or refused to pay any license tax which had been imposed.

"There was no license tax ordinance at any time throughout the period covered by the five (5) payments complanied of in this action requiring any person in the situation of the plaintiff, that is, any person conducting grocery stores, to pay an additional license for the privilege of selling cigarettes therein.

"Throughout the time when the five payments hereinabove mentioned were made the defendant, the City of Lexington, was organized and governed under the Commission form of Government and the status, powers and duties of the City Clerk were such as are fixed by the statutes applying to cities of the second class, operating under such form of government, and by ordinances of the City of Lexington, relating to the City Clerk. Such ordinances may be treated and considered as forming a part of this stipulation so that they may be considered by the Court, as if copied herein.

"Throughout the said time it was provided by the ordinances of the City of Lexington that license taxes should be paid 'to the Commissioner of Public Finance,' and the ordinances of the defendant city were printed and available for public inspection in printed form, as well as in their original forms.

"Throughout said time the defendant City was operated on a budget basis, under which the license taxes and the ad valorem tax rate were predicated each year in some degree upon the rates from the preceding year as a basis for the expected revenue for the current year, and the money paid was paid without protest and without notice to the defendant that any claim would be filed for the reimbursement thereof, and was relied on by the defendant as

constituting a proper part of its revenue and was expended. as such.''

The gist of the action is the recovery of money paid by mistake. The responsive argument of the city is that there is no implied promise of a municipality to refund money paid to it and that there is no authority of a statute—the source of all its powers—for such refund.

In cases of this kind there seems to arise a conflict between equity and what is deemed public policy. On the one side is the unescapable view of constructive fraud—a term evolved to designate what is in the essence the receipt and retention of unmerited benefits through misrepresentation. No one is allowed to retain a benefit from a statement admitted to be false. To take advantage of one's own falsity involves moral delinquency. Money paid without consideration and which in law, honor, or good conscience was not payable ought in law, honor, and good conscience to be recoverable, and that rule applicable to transactions between individuals should be generally made applicable to municipalities and other governments. Only very compelling reasons of public policy relieve the state and its subdivisions from being required to live up to the same moral standards demanded of individuals and to repay taxes collected without authority of a valid law. Even those reasons are being continually attacked as insufficient. Bruner v. Town of Stanton, 102 Ky. 459, 43 S. W. 411, 19 Ky. Law Rep. 1514; City of Louisville v. Becker, 139 Ky. 17, 129 S. W. 311, 28 L. R. A. (N. S.) 1045; Bituminous Casualty Exchange v. Ford-Elkhorn Coal Company, 243 Ky. 456, 48 S. W. (2d) 1057.

On the other hand, this court is committed to the doctrine, at least as related to the commonwealth, that those equitable rules may not be invoked to compel a refund of taxes voluntarily paid to an officer of the law charged with the duty of collecting the tax. This, it may be said, is because the duty to pay taxes does not arise out of contract but out of an obligation resting upon every citizen to contribute to the support of the government to which he owes allegiance. Since the government's revenue is allocated to different funds, usually to be used during the current year, unless it shall have been made to know at the time payment was made that the taxpayer would insist upon a refund if adjudged entitled to it, the money will not be permitted

to be withdrawn and the government's finances thereby disrupted, to the detriment of the people. There should be a sense of security in the economic program. City of Louisville v. Becker, supra; Green, Auditor, v. E. H. Taylor, Jr., & Sons, 184 Ky. 739, 212 S. W. 925; Coleman, Auditor, v. Inland Gas Corporation, 231 Ky. 637, 21 S. W. (2d) 1030.

The recognition of this collision of doctrines has given rise to some confusion in our opinions. Thus for a brief period the court departed from the rule theretofore established that voluntary payment to the state of a tax under a law subsequently declared invalid could not be recovered. Craig, Auditor, v. Security Producing & Refining Company, 189 Ky. 565, 225 S. W. 729; Craig, Auditor, v. Frankfort Distilling Company, 189 Ky. 616, 225 S. W. 731; Craig, Auditor, v. Renaker, 201 Ky. 576, 257 S. W. 1018. But those cases were soon overruled and we went back to the former rule. Coleman, Auditor, v. Inland Gas Corporation, supra. In turn, by Coleman, Auditor, v. Consolidated Realty Company, 239 Ky. 788, 40 S. W. (2d) 387, the Inland Gas Corporation's conclusion was modified to the extent that similar circumstances were held to show payment of an invalid mortgage recording tax was involuntary, the urgent necessities being regarded as duress. However, in the matter of municipal licenses, the nature of the government and the tax being different, the strictness has been less. Scott v. Board of Trustees, Town of New Castle, 132 Ky. 616, 116 S. W. 788, 21 L. R. A. (N. S.) 112.

Here there was actual misrepresentation, the product of assumption born of negligence rather than of an act inspired by malevolence. It differs from the usual case in that there was no collection under color of legal power subsequently proved to be nonexistent because of the invalidity of the law. It is a clear case of misrepresentation, first, by an agent of the city, charged with the duty of issuing licenses and occupying a position where knowledge of the facts might well be presumed (section 3135, Ky. Stats.), and a reliance upon his statements in respect thereof. Thereafter it was the concealment by the city authorities that there was in fact no right to receive the money. Though the ordinances required payment to the commissioner of public finance rather than to city clerk, the commissioner did

receive not only the first check but all subsequent ones as shown by his indorsement.

It is argued by the city that the company should have made an investigation of the ordinances and the acceptance of the mere statement of the city clerk was not enough. The circumstances and nature of the transaction and the position of the respective parties towards each other was such as justified the appellant in reposing trust and confidence in the representations of the city without going further and making an examination of its ordinances. That it was deceived is self-evident. One who has intentionally deceived another to his prejudice will not be heard to say in defense of the charge of fraud that the innocent party ought not to have trusted him, or was guilty of negligence in so doing. As was pertinently said in City of Newport v. Ringo's Executrix, 87 Ky. 635, 10 S. W. 2, 3, 10 Ky. Law Rep. 1046:

"The tax-payer has no voice in the imposition of the burden. He has the right to presume that the taxing power has been lawfully exercised. He should not be required to know more than those in authority over him, nor should he suffer loss by complying with what he bona fide believes to be his duty as a good citizen."

See, also, section 902, Pomeroy's Equity; 12 R. C. L. 378; Trimble v. Ward, 97 Ky. 755, 31 S. W. 864, 17 Ky. Law Rep. 508; Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 104 S. W. 758, 31 Ky. Law Rep. 1130, 12 L. R. A. (N. S.) 427; Hicks v. Wallace, 190 Ky. 287, 227 S. W. 293.

This is not a case of an illegal tax. There was no tax at all. The collection and retention of the money imposed a tribute on the appellant not exacted of others. This suggests the famous phrase of Mr. Justice Matthews: "The equal protection of the laws is a pledge of the protection of equal laws."

Putting aside for the moment that fact, we turn to other authorities relating to the recovery of taxes paid under statutes or ordinances subsequently declared void or inapplicable. Cases involving the state and a refund of money paid under the provisions of section 162 of the Statutes are of a different class. Ziedman & Pollie v. City of Ashland, 244 Ky. 279, 50 S. W. (2d) 557. So also are those cases involving ad valorem taxes, paid to

a city, because of their different nature, and licenses paid where there was no penalty imposed for nonpayment, for the element of summary compulsion is lacking. River Excursion Company v. City of Louisville, 244 Ky. 811, 51 S. W. (2d) 470. The authorities involving the recovery of illegally collected city licenses are brought together in those two opinions and they definitely establish or reaffirm the rule that a tax of this kind paid with knowledge of the conditions as of its validity or inapplicability and without any risk or penalty for nonpayment are deemed voluntary and are not recoverable. But if paid under compulsion (which exists whenever they are collectible by summary process or fine and imprisonment), they are deemed to have been paid involuntarily and may be recovered. Special cigarette licenses are commonly required. Commonwealth, for use and benefit of City of Wilmore, v. McCray, 250 Ky. 182, 61 S. W. (2d) 1043.

> "The popular understanding of the word 'license' undoubtedly is a permission to do something which, without the license, would not be allowable. The object of the license is to confer a right that does not exist without the license."

Standard Oil Company v. Commonwealth, 119 Ky. 75, 82 S. W. 1920, 1021, 26 Ky. Law Rep. 985.

It will be observed from the quoted stipulation of facts that when these payments were made the company knew that those who conducted a business in the city on which a license tax was imposed without paying the tax were subject to the imposition of fines and other penalties, and that the company believed if it failed to pay such licenses it would be liable to those penalties. In this respect of compulsion the case is brought within those just cited, with only the difference that the money was paid under apparently valid ordinances, while here, as stated, there was never any ordinance requiring an additional license of grocers which sold cigarettes. So much the more can it be said that the money was paid under mistake of law, coupled with the circumstance of involuntary payment.

Therefore, we have a case where money was obtained from a citizen by a taxing authority through constructive fraud and paid involuntarily by him through mistake of law. The general conception that recovevry under such condition ought to be had, as we have stated,

must prevail over the conception of primary public good.

The judgment is reversed.