**CITY OF LOUISVILLE et al. v. LOUIS-
VILLE TAXICAB & TRANSFER CO.**

Court of Appeals of Kentucky.

March 23, 1951.

Gilbert Burnett, City Atty., James E.
Thornberry, Asst. City Atty., Louisville,
for appellants.

Henry E. McElwain, Jr., and Allen, Mc-
Elwain, Dinning, & Clarke, all of Louis-
ville, for appellee.

VAN SANT, Commissioner.

This action by appellee was filed under
the declaratory judgment act, Civ.Code
Prac. § 639a–1 et seq., and seeks a declara-
tion that the City of Louisville and the
Commissioners of the Sinking Fund had

**122**

no power or authority, after October 1, 1942, to impose a license fee on taxicabs. As consequential relief, appellee prayed for judgment requiring appellant to refund the fees invalidly exacted of and collected from appellee during the five year period next preceding the filing of the petition. The principal question to be resolved was raised by a general demurrer to the petition, and turns on the proper construction of various provisions of Chapter 281 of the Revised Statutes, one of which, KRS 281.570(2), reads: "No city may impose a license fee or tax upon any motor vehicle operated under a certificate or permit."

The language of this section is plain in respect to all motor vehicles except taxicabs. To determine whether taxicabs are motor vehicles "operated under a certificate or permit", we must look to other sections of Chapter 281, which follow:

"[KRS] 281.010(1) 'Certificate' means a certificate of public convenience and necessity authorized to be issued under KRS 281.090.

"(2) 'City bus' means any motor vehicle used for the transportation of persons for hire exclusively within the limits of a city or within ten miles of its limits, over a regular route.

"(3) 'Common carrier' means any operator of a motor vehicle for hire in common carriage other than the operator of a taxicab or city bus, except that the operator of a city bus who obtains a certificate under subsection (2) of KRS 281.040 shall thereupon become a common carrier as to that portion of its operation covered by such certificate.

"(4) 'Contract carrier' means any person who, under individual contracts or agreements, engages in the transportation (other than as a common carrier) by motor vehicle of passengers or property for hire.

\* \* \* \* \* \*

"(9) 'Permit' means a permit to operate a motor vehicle as a contract carrier authorized to be issued under KRS 281.220.
\* \* \*

"(11) 'Taxicab' means any motor vehicle designed or constructed to accommo-

date or transport passengers, not more than six in number exclusive of the driver, the principal operation of which is confined to the corporate limits and suburban area of cities of this state, and not operating over any definite route, and the destination of which is designated by the passenger or passengers at the time of such transportation.

\* \* \* \* \* \*

"[KRS] 281.040(1) No person shall act as a common carrier without having obtained a certificate of public convenience and necessity from the Division of Motor Transportation.

"(2) Any person who owns, controls, operates or manages any city bus between a city and a point or points within ten miles of the limits of the city, and over a regular route or between fixed termini, may apply to the division for a certificate, as any other common carrier. Any person who owns, controls, manages or desires to operate any city bus between a city and a point or points within its suburban area may apply to the division for a certificate, in which latter instance the comprehensive nature and extent of the proposed service and connecting service, the cost to the public thereof, and the public convenience, if any, which will result from the extension of urban service into the city's suburban area, shall be the basis for the determination as to whether or not such certificate shall be granted or refused, provided, however, that this provision shall not be applicable on any highway now being served by a certificated carrier except upon inter-county-seat highways and within two miles of the limits of such city on such highways. After the issuance of such a certificate, no operator of a motor vehicle for the transportation of passengers for hire, not holding a certificate, shall operate in competition with the holder of such certificate, over the route or any part of the route covered by the certificate.

\* \* \* \* \* \*

"[KRS] 281.200 No person shall act as a contract carrier without having obtained a permit from the Division of Motor Transportation.

\* \* \* \* \* \*

"[KRS] 281.450 No person shall transport passengers for hire on any public highway who is not qualified so to do under KRS 281.040 or 281.200, without having procured from the Division of Motor Transportation an authorization for such operation. Before the division shall issue an authorization the person seeking it shall file with the division an application, in such form as the division requires, setting forth, among other matters, the name and residence of the applicant, the name of the chief officer if the applicant is a corporation, and the names of the members if the applicant is a partnership, the number and description of the vehicles to be used, the place where the applicant proposes to operate, and a list of all drivers employed or to be employed. If any changes are made in the drivers or any additional drivers are employed, the operator shall furnish a list thereof to the division. Authorizations shall be renewed at such times, in such manner and upon such conditions as the division prescribes."

KRS 281.460 provides for certain qualifying steps to be taken "Before any authorization for the operation of a taxicab or city bus is granted by the division under KRS 281.450".

The Division of Motor Transportation has taken the position that, under the statutory provisions above quoted, local taxicab operators come within the definition of "contract carriers" and may not operate without first obtaining contract carrier permits issued by the department.

This position has led to many controversies, the first of which to reach this Court having been presented in Adams v. Burke, 308 Ky. 722, 215 S.W.2d 531. In that case, Adams had obtained a permit from the Division of Motor Transportation authorizing him to operate a taxicab in Carrollton. The city refused to permit him to operate, because he failed to show that existing operations were "not sufficient," as required by city ordinance. We held the operation was authorized by state permit and, since the city ordinance was an imposition on this authority, it was void.

In the case of City of Hazard v. Eversole, 309 Ky. 640, 218 S.W.2d 651, a taxicab operator had obtained a permit from the Division of Motor Transportation. The city refused a permit because of an ordinance limiting the number of taxicabs that might be operated in the city. We held this part of the ordinance was invalid as an encroachment on the authority of the division.

In the case of Brumleve v. Gordon, 310 Ky. 476, 220 S.W.2d 863, Gordon, a taxicab operator, had paid to the Division of Motor Transportation the fees required for operators of contract carriers. The sole question presented was whether the Director had authority under KRS, Chapter 281 to impose a ten dollar fee on the issuance and renewal of the permit. After carefully reviewing the chapter and the amendments of 1942, we held it was the intention of the legislature to classify taxicab operators as contract carriers, and that they might operate only upon the payment of fees and obtaining of permits from the Division of Motor Transportation. To conserve space we will refer the reader to the opinion in that case rather than quote from it.

■■ In its brief, the City tenaciously relies on its interpretation of the legislative intent in the use of the word "authorization" in connection with taxicabs and city busses in KRS 281.450 and 281.460. It contends that the word "authorization" is used in distinction to the words "certificate" and "permit" referred to in KRS 281.040, 281.200, and 281.570(2), on which account, it argues, cities are not forbidden to levy license taxes on taxicabs. In our opinion, however, the word "authorization" in those sections is used in its comprehensive sense and refers to the certificate for common carriers and the permit for contract carriers respectively, whichever may be applicable in a given case. We are further of the opinion that the decision in Brumleve v. Gordon, supra, is to this very effect. In addition to the reasons given in Brumleve v. Gordon, supra, we think that the wording of KRS 281.450 itself manifests the legislative intent in the use of the word authorization. The heading of this section indicates that it is an enactment in respect to taxicabs and city busses.

The body of the section prohibits the operation of the motor vehicles with which the section deals, unless the provisions of KRS 281.040 or 281.200 have been complied with. To comply with 281.040 the operator must obtain a certificate of convenience and necessity for a common carrier; whereas, to comply with 281.200, the operator must obtain a permit for a contract carrier. KRS-281.040 (2) specifically provides that a city bus may obtain a certificate of convenience and necessity for common carriers for their operation outside of the limits of a city. Since taxicabs are not given such permission and are specifically excluded from the definition of common carriers, they must obtain their authority to operate under 281.450 by securing the only authorization available to them, viz., a permit under KRS 281.200. It follows that KRS 281.570 (2) is applicable and inhibits the levying of a license tax by the city on taxicabs operating therein.

■ By answer, appellant pleaded voluntary payment of the license fees as a complete bar to appellee's right to recover. It is unnecessary to this decision to discuss the distinctions between the right to recover taxes unlawfully levied by the state and those unlawfully levied by a city, or those voluntarily paid with full knowledge of their legality and those paid in ignorance thereof, which the taxing levying body, in good conscience, should not retain. In every case where enforcement may be had in a summary proceeding or a burdensome penalty may be exacted for failure to pay, the law will presume payment to have been made involuntarily and will permit recovery. Coleman v. Western and Southern Life Ins. Co., 264 Ky. 210, 94 S.W.2d 601, and this rule will obtain even in cases where the taxes were paid before their actual due date.

■ The ordinance in question imposed a maximum fine of $100.00 per day for the operation of each of the 250 taxicabs owned and being operated by appellant during the periods of time involved—a maximum penalty of $25,000 dollars a day for failure to pay an annual tax of $6250. The mutations of our language are so strange and peculiar that a licensee could not be expected, at such odds, to rely upon the accuracy of an independent opinion concerning a question as controversial as the one presented herein. It is apparent that appellant was compelled to pay the license fees by the exigency of the situation confronting it.

There remains for our determination a relatively simple question raised by the demurrer to the answer. Appellant pleaded and now relies on the provisions of KRS 91.590 (2) as a complete bar to appellee's right to recover. That section, applicable alone to cities of the First Class, reads: "Actions against the city for taxes or assessments claimed to have been illegally paid or collected shall be commenced within six months after the cause of action accrued."

Previous to the 1942 Revision of the Statutes this limitation was compiled in Section 2752, Carroll's Kentucky Statutes, 1936 Edition, which additionally provided that actions for damages against the city should be commenced within six months after the cause of action accrued.

■ Section 59 of the Constitution prohibits the enactment of local or special laws on a number of subjects, one of which is "To regulate the limitation of civil or criminal causes." In City of Louisville v. Kuntz, 104 Ky. 584, 47 S.W. 592, 593, the part of section 2752 relating to actions against the city for damages was declared to be in violation of the portion of Section 59 of the Constitution which we have quoted. The court said: "While the cities of the state may be subject to different laws, so far as they relate to their organization and government, yet, as to matters prohibited by the constitution, they must be subject to the same general laws which apply to other corporations and private citizens." The same reasoning applies to the limitation on the commencement of actions for the recovery of taxes as applies to the limitation on the commencement of actions for damages. For this reason and on this authority, we now declare KRS 91.590 (2) to be in violation of Section 59 of the Constitution.

We are of the opinion the Chancellor properly overruled the demurrer to the petition and properly sustained the demurrer to the answer.

The judgment is affirmed.