806 F.2d 678
 36 Ed. Law Rep. 304
 MARTIN MARIETTA ALUMINUM, INC., Plaintiff-Appellant,
v.
HANCOCK COUNTY BOARD OF EDUCATION; Clifton Banks, as
Superintendent, Hancock County Board of Education; Hancock
County, Kentucky and the Hancock County Fiscal Court; James
F. Fallin; Robert K. Ogle; Delbert Leo Basham; Wallace
Harris; and H.C. Colbert, as County Judge
Executive/Presiding Officer and members respectively, of the
Hancock County Fiscal Court; Rick Cox, as the Hancock
County Treasurer, Defendants-Appellees.
 No. 85-6016.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 25, 1986.
Decided Dec. 2, 1986.
 
 Jesse T. Mountjoy (argued) Holbrook, Gary, Wible & Sullivan, P.S.C., Owensboro, Ky., Morton Holbrook, for plaintiff-appellant.
 Harold Wayne Newton, Hawesville, Ky., for defendants-appellees.
 Before KEITH and KENNEDY, Circuit Judges; and CONTIE, Senior Circuit Judge.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 Plaintiff-appellant Martin Marietta Aluminum, Inc., ("Martin Marietta") appeals the District Court's grant of summary judgment for defendants-appellees Hancock County Board of Education, Hancock County, Kentucky, Hancock County Fiscal Court, and several officials (collectively referred to as "Board"). The Board refused to refund or credit to Martin Marietta's current or future tax liabilities overpaid Utility Gross Receipts License Tax ("Tax") totalling $161,314.00. Martin Marietta raises several issues on appeal: (1) whether the regulation promulgated by the Hancock County Fiscal Court that required Martin Marietta to follow certain procedures to claim the statutory exemption from the Tax conflicts with the enabling statute; (2) whether Martin Marietta is entitled to a refund or credit for the overpaid Tax; and (3) whether the Board's refusal to refund or credit Martin Marietta for the excess Tax violates the equal protection clause under the fourteenth amendment of the United States Constitution and sections 171 and 172 of the Kentucky Constitution. We find that the regulation is valid and that Martin Marietta is not entitled to a refund or credit for the overpaid Tax and affirm.
 
 
 2
 The Utility Gross Receipts License Tax, Ky.Rev.Stat.Ann. Secs. 160.613-160.617 (Baldwin 1981), enacted in 1966, provides that school boards may levy a utility gross receipts tax for support of their schools. Section 160.613(1) of the statute provides that the Tax shall be three percent of the "gross receipts" derived from the furnishing within the county of specified utilities. Section 160.613(1) further provides that the term
 
 
 3
 "gross receipts" shall not include amounts received for furnishing energy or energy-producing fuels, used in the course of manufacturing, processing, mining, or refining to the extent that the cost of the energy or energy-producing fuels used exceeds three per cent (3%) of the cost of production....
 
 
 4
 Thus, the statute provides an exemption from the Tax to the extent that the cost of energy or energy-producing fuels used by a manufacturer, processor, miner or refiner exceeds three percent of its cost of production. The statute is silent as to how this exemption is to be claimed. Section 160.617 provides that any utility required to pay the Tax may increase its rates in any county in which it is required to pay the Tax by three percent. The utility is required to state separately on its bills to customers the amount of this increase and identify it as "[r]ate increase for school tax."
 
 
 5
 In 1969, at the request of the Hancock County School Board, the Hancock County Fiscal Court, the taxing authority of Hancock County, adopted an Ordinance and promulgated regulations for the levy of the Tax for the Hancock County Schools. The Ordinance appointed the Hancock County Treasurer as collector and administrator of the Tax, and required the Treasurer to account to the Board the taxes collected. The Ordinance and the regulations permit payment of the Tax in one of two ways: (1) a collecting utility adds three percent to its utility bills and pays this three percent to the Treasurer who remits the Tax to the Hancock County School Board (the Utility Payment Method); or (2) direct monthly payments of the Tax by the taxpayer to the Treasurer (the Direct Payment Method).
 
 
 6
 Taxes computed by the Utility Payment Method are arrived at by adding three percent to the user's utility bill. Taxes computed by the Direct Payment Method are computed by exempting all energy costs in excess of three percent of the user's cost of production. Taxpayers using the Direct Payment Method must make monthly payments to the Treasurer of Tax applicable to nonexempt energy and energy-producing fuels based on an estimate that the taxpayer makes at the beginning of its fiscal year. At the end of the fiscal year, the taxpayer makes an accurate accounting of its Tax liability and pays additional Tax or receives a refund or credit to its future Tax liability.[1]
 
 
 7
 One regulation adopted by the Hancock County Fiscal Court requires, as a condition to obtaining the exemption, that the taxpayer obtain an energy direct pay authorization from the Kentucky Department of Revenue and pay the Tax according to the Direct Payment Method.[2] The regulation does not permit a utility user paying the Tax through the Utility Payment Method to claim the statutory exemption.
 
 
 8
 When the Tax was first enacted, Harvey Aluminum, the predecessor corporation to Martin Marietta, began paying the Tax by the Direct Payment Method. In April, 1970, however, it chose to change to the Utility Payment Method. Harvey Aluminum, and then Martin Marietta, continued to pay by the Utility Payment Method until 1981. Martin Marietta then requested the Board to refund or credit to its present or future Tax liability the $161,314.00 it had paid during the years 1977 through 1980, inclusive, which exceeded three percent of the cost of production. The Board denied this request and Martin Marietta filed this action.
 
 
 9
 The District Court granted the Board's motion for summary judgment. It concluded that the regulation requiring the payment of the Tax by the Direct Payment Method in order to claim the exemption did not conflict with the enabling statute and that Martin Marietta paid the excess Tax voluntarily. Consequently, the District Court ruled that Martin Marietta was not entitled to a refund or credit.[3]
 
 I. The Enabling Statute
 
 10
 Martin Marietta does not allege that the Hancock County Fiscal Court lacked authority to promulgate regulations for the collection of the Tax.[4] Martin Marietta contends that it is entitled to the statutory exemption from the Tax because during the four-year period its cost of energy and energy-producing fuels exceeded three percent of its cost of production. According to Martin Marietta, section 160.613(1) provides an unconditional entitlement to the exemption whatever the method of payment used by a taxpayer. Because the regulation promulgated by the Hancock County Fiscal Court limits the exemption to taxpayers paying by the Direct Payment Method, Martin Marietta contends that the regulation conflicts with the enabling statute and constitutes an attempt to amend, alter, enlarge or limit the terms of the legislative enactment. Martin Marietta also asserts that the Hancock County Fiscal Court, in conditioning the statutory exemption on the use of the Direct Payment Method, exercised its authority contrary to statute in violation of Ky.Rev.Stat.Ann. Secs. 67.080(3) and 67.083(2).[5]
 
 
 11
 The Board contends that the statute permits fiscal courts to promulgate regulations providing for the collection of the Tax, and that the Hancock County regulation merely provides a detail for the collection of the Tax. The Board also emphasizes that Martin Marietta could have availed itself of the statutory exemption had it complied with the regulation.
 
 
 12
 An examination of Kentucky case law is necessary for this Court to determine whether the regulation is an attempt to amend, alter, enlarge or limit the Tax statute. The District Court in upholding the regulation relied upon Lamar v. Board of Educ., 467 S.W.2d 143 (Ky.1971). In that case, plaintiff challenged the validity of a regulation permitting an extension of time in which to pay the Tax. The statute requires the Tax to be remitted on or before the twentieth day of the next succeeding month. Ky.Rev.Stat.Ann. Sec. 160.615. The Hancock County Fiscal Court adopted a regulation that permitted utilities unable to remit the Tax by the twentieth of each month to obtain an extension for not more than ten days. The court of appeals upheld the regulation because the regulation was not such a deviation from the statutory scheme as to destroy the validity of the Tax. 476 S.W.2d at 149.
 
 
 13
 Martin Marietta relies upon these cases in which regulations were held invalid. In Linkous v. Darch, 323 S.W.2d 850 (Ky.1959), the court of appeals considered the validity of a regulation promulgated by the Commissioner of Insurance requiring a wholesale dealer of petroleum gas to inspect the retailer's facilities before delivery. The purpose of this inspection was to ensure that the retailer's facility was constructed and maintained in accordance with the regulations prescribed by the Commissioner. The statute authorizing the Commissioner to promulgate regulations provided the Commissioner with authority to set minimum standards covering the design, location, installation, and operation for the storage, transportation, and handling of such gases to the extent that the regulations were reasonably necessary for the protection of public health, safety, and welfare. The court noted that an agency generally may regulate relative to the administration and enforcement of a statute when the regulation is within the limit set by statute. Nevertheless, the court held that the regulation exceeded the Commissioner's power because it was an attempt, by regulation, to amend or alter the terms of a legislative enactment. Id. at 852. According to the court, the legislature vested the Commissioner with the duty to inspect retail facilities; by imposing this duty on the wholesale dealer, the regulation placed an unwarranted burden on such dealer. The Hancock County regulation, in contrast, does not attempt to enlarge or limit the terms of the legislative enactment. All taxpayers eligible for the exemption need only obtain a direct pay authorization and pay the Tax according to the Direct Payment Method in order to claim the statutory exemption.
 
 
 14
 Martin Marietta cites two other cases in support of its contention that the regulation imposes a new condition on the availability of the exemption. In Texas Gas Transmission Corp. v. Board of Educ., 502 S.W.2d 82 (Ky.Ct.App.1973), Texas Gas contended that a regulation promulgated by a fiscal court excluded from the definition of "gross income" for the purpose of the Tax, the furnishing of natural or artificial gas within the county, thus relieving Texas Gas from responsibility for the payment of the Tax. The court concluded that, although section 160.617 vested local taxing authorities with the right to enact regulations providing for the details of the collection of the Tax, such regulations could not amend or repeal the statute imposing the Tax. Accordingly, because the statute clearly imposed the Tax on gross receipts derived from the sale of gas within the county, the court refused to interpret the regulation as exempting natural gas suppliers from the Tax. Id. at 87.
 
 
 15
 In Barnes v. Department of Revenue, 575 S.W.2d 169 (Ky.Ct.App.1978), the taxpayer contended that the Revenue Department erroneously concluded that the taxpayer was not entitled to the statutory exemption from the state sales and use tax. The statute exempted from taxation ships and vessels used principally in the transportation of property or in the conveyance of persons for hire. Ky.Rev.Stat.Ann. Sec. 139.483 (Baldwin 1983). The Revenue Department contended that the exemption related only to river-industry vessels such as barges and towboats, and not pleasure craft. The Kentucky Court of Appeals held that the taxpayer was entitled to the exemption because the statute drew no distinction between industrial commercial craft and pleasure commercial craft. 575 S.W.2d at 171.
 
 
 16
 Both Texas Gas and Barnes are distinguishable from the present case. In Texas Gas, plaintiff requested the court to interpret a local regulation in a manner directly contrary to the enabling statute. The statute clearly imposed the Tax on suppliers of natural gas; the regulation could not be construed to exempt natural gas suppliers without conflicting with the statute. Similarly, in Barnes, if the regulation were upheld, plaintiff, under any circumstances, would be precluded from claiming the sales and use tax exemption for ships used principally in the transportation of persons for hire. Under the regulation in Barnes, owners of commercial pleasure craft would always be subject to the tax.
 
 
 17
 In the present case, however, Martin Marietta and other taxpayers can claim the statutory exemption if they comply with the Hancock County regulation conditioning the exemption on the use of the Direct Payment Method. The regulation does not attempt to make the Tax applicable to the cost of energy exceeding three percent of the taxpayer's cost of production. Other taxpayers have used the Direct Payment Method and received refunds of overpaid Tax. Taxpayers such as Martin Marietta can use their energy direct pay authorizations issued for state sales tax purposes to claim their exemption from the Tax. Thus, unlike Barnes and Linkous, the regulation does not alter the applicability of the Tax, and does not attempt to enlarge or limit the terms of the legislative enactment. As the District Court noted, in Lamar the court concluded that a regulation which on its face conflicted with the Tax statute was not found to be such a deviation from the statute that it destroyed the validity of the levy. The regulation in the present case merely requires taxpayers to pay the Tax according to the Direct Payment Method in order for the taxpayer to claim the exemption. Thus, the regulation does not destroy the validity of the Tax.[6]
 
 II. Refund Or Credit For Overpaid Tax
 
 18
 Martin Marietta contends that it is entitled to a refund or credit for the overpaid Tax because the regulation is invalid and it paid the excess Tax involuntarily. With the exception of the state refund statute,[7] Kentucky law provides that a taxpayer is not entitled to a refund or credit of tax not actually due unless the statute or regulation imposing the tax is declared invalid and the tax was paid involuntarily, or the taxing authority engaged in some form of misrepresentation. See, e.g., City of Louisville v. Louisville Taxicab & Transfer Co., 238 S.W.2d 121 (Ky.1951) (illegal tax recoverable if enforcement of tax may be had in summary proceeding or a burdensome penalty may be exacted); Great Atlantic & Pacific Tea Co. v. City of Lexington, 256 Ky. 595, 76 S.W.2d 894 (1934) (plaintiff entitled to a refund where city official charged with duty of issuing licenses stated that license tax was due when in fact no tax existed); Coleman v. Consolidated Realty Co., 239 Ky. 788, 40 S.W.2d 387 (1931) (illegal tax paid under duress may be recovered); Spalding v. City of Lebanon, 156 Ky. 37, 41, 160 S.W. 751 (1913) ("illegal taxes paid voluntarily may not be recovered, but if they are paid under compulsion which exists whenever they are collectible by summary process of fine and imprisonment, they come within the general rule and may be recovered").
 
 
 19
 Martin Marietta is not entitled to a refund or credit because the Hancock County regulation does not contravene Kentucky law and was paid voluntarily. In Coleman v. Inland Gas Corp., 231 Ky. 637, 21 S.W.2d 1030 (1929), the court stated that under the general principles of common law, unless a statute provides otherwise, there "may be no refund of taxes paid when no taxes were due." Id. at 639, 21 S.W.2d at 1031. The court provided the rationale for this rule:
 
 
 20
 all state governments have been slow indeed to open the doors of their treasuries and allow money to pass therefrom after it has once found lodgment within the governmental vaults. This is as it should be. The state is the sovereign, and its affairs must be conducted for the best interest and welfare of the people.... When the income is collected it is allocated to different funds. The state uses the fund nearly always during the current year. It has been universally held, unless a contrary conclusion was forced by an ironclad statute, that no taxpayer should have the right to disrupt the government by demanding a refund of his money whether paid legally or otherwise ....
 
 
 21
 Id. at 640, 21 S.W.2d at 1031. Because the Hancock County Fiscal Court had the authority to promulgate regulations for the collection of the Tax, and the regulation at issue does not enlarge or limit the terms of the legislative enactment, the regulation does not violate Kentucky law.[8]
 
 
 22
 Martin Marietta cites several cases in support of its contention that it paid the excess Tax involuntarily. In Coleman v. Consolidated Realty Co., 239 Ky. 788, 40 S.W.2d 387 (1931), a statute required Consolidated Realty to pay a tax for the privilege of having its mortgages recorded. If Consolidated Realty did not pay the tax, it would have incurred the risk of losing its superior lien on the mortgaged property. The U.S. Supreme Court declared the statute unconstitutional and Consolidated Realty sought a refund. In determining whether the tax was paid involuntarily, the Consolidated Realty court stated: "the real question is whether there was such an immediate or urgent necessity for the payment [of the tax] as to imply that it was made under compulsion." Id. at 791, 40 S.W.2d at 388. Because Consolidated Realty would have been unable to carry on its business had it refused to pay the illegal tax, the court concluded that Consolidated Realty paid the tax involuntarily and was entitled to a refund. Id. at 793, 40 S.W.2d at 389. In City of Louisville v. Louisville Taxicab & Transfer Co., 238 S.W.2d 121 (Ky.1951), plaintiff alleged that the City had no authority to impose a license fee on taxicabs, and sought a refund of fees collected over a five year period. The court of appeals concluded that a state statute prevented the City from imposing the license fees on taxicabs. Because a City ordinance authorized the imposition of a fine for failure to pay the fees, the court concluded that plaintiff was compelled to pay the fee and was entitled to a refund. According to the court, "[i]n every case where enforcement may be had in a summary proceeding or a burdensome penalty may be exacted for failure to pay, the law will presume payment to have been made involuntarily and will permit recovery." Id. at 124.
 
 
 23
 These cases demonstrate that Martin Marietta paid the excess Tax voluntarily. The Board did not assess the excess Tax or threaten to impose sanctions if Martin Marietta failed to pay the excess Tax. Although Martin Marietta cites the section of the Tax statute authorizing a penalty for failing to pay the Tax timely,[9] the Board would not have exacted a penalty under this provision had Martin Marietta failed to pay the excess Tax.
 
 
 24
 Martin Marietta also relies on Great Atlantic & Pacific Tea Co. v. City of Lexington, 256 Ky. 595, 76 S.W.2d 894 (1934), in support of its contention that it is entitled to a refund or credit. In Great Atlantic, the plaintiff sought to recover monies paid as a license tax for the privilege of selling cigarettes in its grocery stores. Prior to adding cigarettes to its stock, a city clerk charged with the duty of issuing licenses informed plaintiff that it had to pay a license fee before any store could sell cigarettes. No statute or regulation required plaintiff to pay such a fee. The court held that plaintiff was entitled to a refund because plaintiff relied on the clerk's misrepresentation. Id. at 599, 76 S.W.2d at 896. Martin Marietta does not allege that the Board engaged in any misrepresentation in collecting the excess Tax. In fact, Martin Marietta concedes that the Board did not collect the excess Tax with actual knowledge that such Tax was not due. Brief for Appellant at 29.
 
 
 25
 Finally, Martin Marietta cites two special assessment cases in support of its refund or credit argument. In Webster County Soil Conservation Dist. v. Shelton, 437 S.W.2d 934 (Ky.1969), a local water district dissolved itself and certain members sued for a refund of certain monies paid to the district. The court of appeals stated that under its decisions "it is about as difficult to recover taxes or assessments once made, as it is to 'draw blood from a turnip.' " Id. at 937. Nevertheless, the court, relying on the distinction between the right to recover taxes collected under the general powers of taxation and the right to recover special assessments, concluded that the members were entitled to a refund. Id. at 938. The special assessments were substantial and not used for current expenses. A similar conclusion was reached in Barnes v. Stearns Coal & Lumber Co., 295 Ky. 812, 175 S.W.2d 498 (1943). There, plaintiff paid monies to the state Unemployment Compensation Committee in the hope of receiving a better payroll percentage rate on its next year's unemployment insurance contributions. Subsequently, plaintiff learned that it did not have to pay this money in order to receive the better rate, and requested a refund. The court concluded that although the payments were regarded as taxes, they were paid into an insurance fund and administered separate from all public monies. The court noted that unlike general taxes, these monies may not be disbursed for a long time. Therefore, the court concluded that a refund was required. Id. at 816, 175 S.W.2d at 498-501.
 
 
 26
 The Taxes paid to the Board in the present case are not a form of special assessment. They are used for a general public purpose--the financing of the Hancock County Schools. These Taxes are likely to be disbursed to the schools promptly and not remain in a fund for a long period of time. Thus, neither Shelton nor Barnes require the Board to refund or credit Martin Marietta the overpaid Tax.
 
 III. Constitutional Provisions
 
 27
 Martin Marietta contends that the Board's administration of the Tax statute violates its rights under the equal protection clause of the fourteenth amendment to the United States Constitution and sections 171 and 172 of the Kentucky Constitution.[10] Martin Marietta alleges that its constitutional rights have been violated because the Board gives refunds or credits to taxpayers who pay according to the Direct Payment Method when their cost of energy or energy-producing fuels used exceeds three percent of their cost of production, but denies it to those who fail to use that method.
 
 
 28
 Because this case involves economic regulation, the equal protection clause of the fourteenth amendment requires the Board to have a rational basis for the regulation. Williamson v. Lee Optical, 348 U.S. 483, 487-88, 75 S.Ct. 461, 464-65, 99 L.Ed. 563 (1955). The Tax statute authorizes, but does not require, school boards to levy the Tax. The statute does not enumerate any procedures for the collection of the Tax or for the grant of the cost of production exemption. As discussed above, the Hancock County regulation authorizes two methods for paying the Tax. Under the Utility Payment Method, the Tax is collected from the utility in gross although it is calculated by multiplying the amount of the taxpayer's utility bill by three percent. Neither the utility nor the Hancock County Treasurer know how much of the Tax collected, according to this method, is subject to the cost of production exemption.
 
 
 29
 Taxpayers using the Direct Payment Method must make monthly payments to the Treasurer of Tax applicable to nonexempt energy and energy-producing fuels based on an estimate that the taxpayer makes at the beginning of its fiscal year. At the end of its fiscal year, the taxpayer reconciles its estimate to the amount of Tax due. Because the taxpayer paying according to the Direct Payment Method makes an estimate in the beginning of its fiscal year of the amount of Tax due, the taxpayer will factor in the cost of production exemption, and it is unlikely that the taxpayer will substantially overpay the Tax. The Direct Payment Method, then, will cause less disruption in the finances of the Hancock County School District because the Board will not be required to refund large amounts of Tax. This is a rational basis for conditioning the availability of the statutory exemption on the use of the Direct Payment Method. Accordingly, the regulation does not violate the equal protection clause of the fourteenth amendment.
 
 
 30
 Martin Marietta also alleges a violation of sections 171 and 172 of the Kentucky Constitution. Although section 171 is applicable to the collection of license taxes, Davis v. Pelfrey, 285 Ky. 298, 299, 147 S.W.2d 723, 724 (1941), it prohibits only unreasonable and arbitrary classifications. Id. The Hancock County regulation is neither arbitrary nor unreasonable.
 
 
 31
 Finally, the regulation does not violate section 172 of the Kentucky Constitution. Section 172 requires property to be assessed for taxation at its fair cash value. As discussed above, the Board did not assess Martin Marietta for the excess Tax.[11]
 
 
 32
 CONTIE, Senior Circuit Judge.
 
 
 33
 I respectfully dissent from the majority's decision, since I would hold that Martin Marietta is entitled to a refund or credit for its overpaid taxes. First, I find persuasive Martin Marietta's argument that the Hancock County regulation is invalid because it amends, alters, enlarges or limits the terms of section 160.613(1). See Linkous v. Darch, 323 S.W.2d 850, 852 (Ky.1959). By restricting application of the section 160.613(1) exemption to taxpayers who pay by the Direct Payment Method, the school board has placed itself in the position of being able to collect more taxes than authorized by the statute. In my opinion, this is an enlargement of the terms of the legislative enactment. Second, I would find that Martin Marietta paid the tax involuntarily. A penalty for failing to pay the tax in question is established by Ky.Rev.Stat.Ann. Sec. 160.648 (Baldwin 1981). Thus, a penalty may have been exacted from Martin Marietta had it not paid the tax. I believe that this alone is sufficient reason to conclude that the tax was paid involuntarily. See City of Louisville v. Louisville Taxicab & Transfer Co., 238 S.W.2d 121 (Ky.1951). Accordingly, since I believe that the Hancock County regulation contravenes Kentucky law, and that the tax was paid involuntarily, I would reverse the judgment of the district court and hold that Martin Marietta is entitled to a refund or credit.
 
 
 
 [1]
 Neither the Ordinance nor the regulations contain a procedure for refunding or providing a credit for overpaid Tax. Nevertheless, it is the Board's practice to refund or credit any overpaid Tax provided that the Tax was paid using the Direct Payment Method
 
 
 [2]
 The regulation provides in part:
 Receipts from sales for which energy direct pay authorizations are received. Receipts from sales of energy or energy-producing fuels to persons who hold an energy direct pay authorization are not subject to tax provided the seller retains in his files a copy of the authorization. (A copy of the energy direct pay authorization issued by the Kentucky Department of Revenue for sales tax purposes will satisfy this requirement.)
 ....
 All holders of energy direct pay authorizations issued by the Kentucky Department of Revenue for sales tax purposes may use such authorizations to purchase energy and energy producing fuels without payment of the utility gross receipts tax to their suppliers. Such persons shall make monthly payments to the county of the tax applicable to nonexempt energy and energy producing fuels on the same basis they report sales tax to the state.
 See Joint Appendix at 51-52. During the years in question, Martin Marietta had a direct pay authorization for state sales tax purposes.
 
 
 [3]
 The District Court also apparently concluded that the Board's failure to refund or credit the Tax did not violate Martin Marietta's rights under the Kentucky or United States Constitutions
 
 
 [4]
 At the time that the Hancock County Fiscal Court promulgated the regulation at issue, section 160.617 authorized fiscal courts to enact regulations "as may be necessary for the collection of the tax." 1966 Ky.Acts ch. 24 pt. III, Sec. 11. The General Assembly deleted this provision from the statute in 1976, 1976 Ky.Acts ch. 127, Sec. 13, because it gave school districts the direct authority to levy their own taxes. Presently, section 160.460 provides that all school taxes shall be levied by school boards. The statute also gives school boards the authority to promulgate regulations for the collection of the Tax. Section 160.160 gives school boards the power to do all things necessary to accomplish the purpose for which they were created. Furthermore, section 160.290 authorizes school boards to make regulations for the transaction of business
 
 
 [5]
 Section 67.080(3) provides: "The fiscal court shall not exercise executive authority except as specifically assigned by statute." Ky.Rev.Stat.Ann. Sec. 67.080(3) (Baldwin Supp.1986). Section 67.083(2) provides: "The fiscal court of any county is hereby authorized to levy all taxes not in conflict with the Constitution and statutes of this state now or hereafter enacted." Id. Sec. 67.083(2)
 
 
 [6]
 As discussed above, at the time the Hancock County Fiscal Court adopted the regulation at issue, section 160.617 authorized fiscal courts to promulgate regulations as may be necessary for the collection of the Tax. Because the regulation provides a means for collecting the Tax, and the regulation does not conflict with the statute, the regulation does not violate either Sec. 67.080(3) or Sec. 67.083(2)
 
 
 [7]
 The state refund statute provides:
 When money has been paid into the state treasury in payment of any state taxes, except ad valorem taxes, whether payment was made voluntarily or involuntarily, the department of revenue shall authorize refunds or credits, to the person who paid the tax ... of any overpayment of tax and any payment where no tax was due.
 Ky.Rev.Stat.Ann. Sec. 134.580 (Baldwin 1983). Although the court in Lamar v. Board of Educ., 467 S.W.2d 143 (Ky.1971), stated that the Tax is for state purposes, the Tax is a local tax and the monies levied by the Tax are not paid into the state treasury. Therefore, the state refund statute is not applicable.
 
 
 [8]
 A refund or credit for the overpaid Tax would be contrary to the policy enunciated in Inland Gas Corp. The Hancock County School District's resources are considerably more limited than those of the state of Kentucky. Thus, a refund or credit would cause considerable disruption of the District's finances
 
 
 [9]
 See Ky.Rev.Stat.Ann. Sec. 160.648 (Baldwin 1981)
 
 
 [10]
 Section 171 of the Kentucky Constitution provides in part: "Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax...." Ky. Const. Sec. 171. Section 172 provides: "[a]ll property, not exempt from taxation by this Constitution, shall be assessed for taxation at its fair cash value...." Id. Sec. 172
 
 
 [11]
 Martin Marietta cites Newman v. Dickson, 305 Ky. 279, 203 S.W.2d 33 (1947), in support of its proposition that the Board's failure to refund the overpaid Tax violates section 172. In Newman, the taxpayer sought to enjoin the sheriff from collecting tax allegedly due from her present right to receive future income from a life insurance policy. The taxpayer, relying on Button v. Drake, 302 Ky. 517, 195 S.W.2d 66 (1946), listed this property for taxation on July 1, 1945. The opinion in Drake was handed down on June 22, 1945, but withdrawn before it became final and was handed down again on June 4, 1946. The Drake court overruled a previous case and concluded that such proceeds were taxable but held in the second opinion that the decision would be given prospective effect only. Id. at 525-26, 195 S.W.2d at 70. Thus, the taxpayer in Newman did not have to list this property as taxable and her listing was on the basis of the court's first opinion in Drake. Accordingly, because the Drake opinion was given prospective effect, the Newman court concluded that the taxpayer's property was not subject to taxation and permitted the taxpayer to correct her error. The tax had not yet been collected. The Newman court based its decision on the second opinion in Drake, not the Kentucky Constitution