INLAND CONTAINER CORPO-
RATION n/k/a Inland Pa-
perboard, Appellant,

v.

MASON COUNTY (Kentucky) Board
of Education, et al., Appellees,

and

Revenue Cabinet, Commonwealth
of Kentucky, Appellant,

v.

Mason County Board of Education, In-
land Container Corporation, and
Fleming–Mason Rural Electric Coop-
erative Corporation, Appellees.

98–SC–0349–DG, 98–SC–0531–DG.

Supreme Court of Kentucky.

Nov. 18, 1999.

J. Kelly Clarke, Clarke & Clarke, Maysville, Winston E. Miller, Joseph L. Ardery, Steven M. Crawford, Bridget H. Papalia, Brown, Todd & Heyburn, PLLC, Louisville, for Inland Container Corp.

D. Randall Gibson, Mark S. Fenzel, Augustus S. Herbert, Middleton & Reutlinger, Louisville, Robert G. Zweigaart, Margaret Susan Brammer, Royse, Zweigart, Kirk & Brammer, Maysville, for Mason County (Kentucky) Board of Education.

Stewart Douglas Hendrix, Kenton L. Ball, Kentucky Revenue Cabinet, Division of Legal Services, Frankfort, for Revenue Cabinet, Commonwealth of Kentucky.

Mark F. Sommer, Greenbaum Doll & McDonald PLLC, Louisville, for Amicus Curiae, Kentucky Chamber of Commerce.

Marvin W. Suit, Suit, McCarty & Price, Flemingsburg, for Fleming–Mason Rural Electric Cooperative Corporation.

LAMBERT, Chief Justice.

This Court granted discretionary review (CR 76.20) to consider whether a taxpayer is entitled to a refund or credit of local taxes paid in excess of the amount owed but where there exists no statutory authority for a refund. In order to resolve this issue, it is first necessary to review the particular factual circumstances of this case and then to determine whether these circumstances fit into the scheme of common law tax refunds.

The underlying facts of this case are as follows. Pursuant to KRS 139.310, the Commonwealth of Kentucky assesses a six percent (6%) sales tax on a manufacturer's electrical consumption. This state utility tax cannot exceed three percent of the manufacturer's total cost of production ("State 3% Cap"). KRS 139.480(3). The Revenue Cabinet administers the state utility tax and the proceeds are deposited into the state treasury.

Pursuant to KRS 160.613, local communities may enact regulations providing for a local utility tax for the purpose of collecting revenue for schools. This statute provides:

There is hereby authorized a utility gross receipts license tax for schools not to exceed three percent (3%) of the gross receipts derived from the furnishing, within the county, of ... electrical power ... "Gross receipts" includes all amounts received in money, ... or other monies worth in any form, as consideration for the furnishing of the above utilities, except that "gross receipts shall not include amounts received for furnishing energy or energy-producing fuels, used in the course of manufacturing, processing, mining, or refining to the extent that the cost of the energy or energy-producing fuels used exceeds three percent (3%) of the cost of production[.]

KRS 160.613(1). In April of 1975, the Mason County Fiscal Court promulgated a local utility regulation pursuant to the authority of the enabling statute. This Mason County local utility tax is similar to the state utility tax in that it is limited to three percent of the manufacturer's total cost of

production ("Local 3% Cap"). The local regulation contains no provision authorizing a refund or credit in the event excess tax has been paid.

Both the state and local utility taxes are payable through either of two methods: the utility payment method or the direct payment method. Under the utility payment method, the tax is added to the consumer's utility bill, and the utility forwards the tax to the taxing authority. Under this method, however, there is no provision for calculating into the tax bill the exemption for energy costs that exceed 3% of the cost of production. If a consumer wishes to claim this exemption, the consumer must pay the tax bill by the direct pay method.

In order to use the direct pay method, the consumer must obtain from the Revenue Cabinet an Energy Direct Pay Authorization ("EDPA"), which allows an applicant to pay its taxes directly to the taxing authority rather than remitting the tax to the utility. Only under this method of payment may the exemption be calculated into the bill. In other words, having an EDPA determines whether the taxpayer will be compelled to remit a 6% tax on gross receipts for state purposes and a 3% tax on gross receipts for local purposes or whether it will make direct payments to the taxing authority based on the Local 3% Cap and the State 3% Cap.

In 1992, Inland Container Corporation commenced operations at a new manufacturing plant in Maysville. The plant was the company's first facility in Kentucky. It cost over $171 million and created approximately 200 new jobs. In early 1992, prior to commencement of operations at the new plant, Inland's controller at the new facility contacted the Fleming–Mason Rural Electric Cooperative Corporation ("RECC") to discuss the state and local utility taxes on the plant's energy consumption.

The controller expressed the view that Inland could pay taxes at the State and Local 3% Caps. Inland had access to data from a similar plant indicating that both the State and Local 3% Caps would apply. The controller was informed, however, that such estimates could not be used in issuing an EDPA and that Inland would have to operate for a full year before a determination could be made regarding whether the State 3% Cap would apply. Thus, the controller was further informed, Inland would have to pay the state utility tax at 6% of gross utility expenses and the local utility tax at 3% of gross utility expenses for at least one full year before the company could apply for an EDPA.

Thereafter, Inland contacted the Revenue Cabinet to discuss the utility taxes. The Cabinet also informed Inland that the plant would have to operate for at least one year before an EDPA could be obtained. Although 103 KAR 30:140(8) permits the issuance of an EDPA if "the taxpayer can show to the cabinet's satisfaction that such cost may reasonably be expected to exceed three (3) percent of their anticipated cost of production," this regulation by its plain language makes the issuance subject to the Cabinet's discretion. The Cabinet now acknowledges that it rarely ever grants an EDPA based upon an estimate. Its administrative practice, according to the record in this case, is to grant an EDPA only after figures from an actual year of operation are available. *See* 103 KAR 30:140(4)–(7) (describing the specific EDPA application procedure). At that time, the taxpayer may make an adjustment to obtain a refund of any excess taxes paid prior to the time at which an EDPA was granted.

Inland was unable to obtain an EDPA prior to commencement of operations and the company paid the taxes according to the utility payment method until the Cabinet granted it an EDPA in November 1994. As part of its EDPA application to the Cabinet in February 1994, Inland submitted a request for a refund of the state utility tax paid prior to December 31, 1993 in excess of the State 3% Cap. At the same time, Inland submitted a request to the

Mason County Board of Education for a refund of the local utility tax the company paid prior to December 31, 1993 in excess of the Local 3% Cap. When the Cabinet granted Inland's request for an EDPA in November 1994, the Cabinet refunded all the excess state utility tax Inland had paid until that time.

The Mason County Board of Education, however, failed to refund the excess local utility tax of $510,038.31 Inland had paid during the same period. In defense of this continuing failure, the Board contends that there is no statutory authority for a refund or credit. Moreover, the Board contends that since the RECC collected the tax, the Board had no knowledge of Inland's alleged overpayment at the time the payments were made. Thus, the Board used these funds to prepare school budgets and conduct school operations. The Board claims it would be inequitable to require a refund.

Inland filed suit against the Board in Mason Circuit Court in November 1995, seeking either a refund or a credit of the excess tax. The Board filed third-party complaints against the Cabinet and the RECC, seeking indemnity in the event the Board was required to grant the company a refund or a credit. The trial court concluded that Inland was entitled to a refund and granted its motion for summary judgment. The court also dismissed the Board's third-party complaints against the Cabinet and the RECC.

The Court of Appeals reversed and remanded the case. In reaching this conclusion, the court noted that as there was no statutory authority for a refund, Inland's right to a refund would have to be based on common law. The court referred to an opinion from the Sixth Circuit, *Martin Marietta Aluminum, Inc. v. Hancock County Board of Education,* 806 F.2d 678 (6th Cir.1986), for a discussion of the Kentucky common law of tax refunds. According to *Martin Marietta,* there are two general situations in which the common law authorizes a tax refund: (1) when the

taxing statute or regulation is invalid and the tax payments were submitted involuntarily, and (2) when the taxing authority has engaged in misrepresentation.

The Court of Appeals concluded that the Mason County utility tax regulation was not invalid and Inland had not made the payments involuntarily, yet that there was a genuine issue of material fact regarding whether the Board had engaged in misrepresentation with regard to certain communications between the Board and Inland. In this latter regard, in December 1992, two months after Inland commenced operations, the assistant superintendent of the Mason County school system sent Inland a form and instructions for making direct payment of the local tax to the Board. The form and instructions both indicate that the taxpayer cannot claim the exemption without an EDPA. Inland responded to the Board that it was the company's understanding that it could not pay the tax directly until an EDPA was obtained. Based upon these facts, the Court of Appeals remanded the case for findings of fact as to possible misrepresentation, namely, the inconsistency between the Board's statement that Inland could pay the tax directly and the written information the Board supplied indicating that an EDPA was necessary to claim the exemption.

Inland now argues that, according to the common law of Kentucky, a taxpayer is entitled to a refund or credit of taxes involuntarily paid that were not owed. *Great Atlantic and Pacific Tea Company v. City of Lexington,* Ky., 256 Ky. 595, 76 S.W.2d 894, 895 (1934). The underlying rationale for this principle was stated in *Great Atlantic:*

> Money paid without consideration and which in law, honor, or good conscience was not payable ought in law, honor, and good conscience to be recoverable, and that rule applicable to transactions between individuals should be generally made applicable to municipalities and other governments. Only very compel-

ling reasons of public policy relieve the state and its subdivisions from being required to live up to the same moral standards demanded of individuals and to repay taxes collected without authority of a valid law.

76 S.W.2d at 895. In *Great Atlantic*, the taxpayer paid a tax that a city official had said was required by a local ordinance. There was, however, no such ordinance, and the taxpayer was granted a refund.

*Great Atlantic* is distinguishable from the case *sub judice* because it dealt with taxes paid although they were never authorized by ordinance or statute. Inland contends that the distinction between an invalid tax and a tax that is not owed is not determinative; that when a taxpayer pays a tax with knowledge it is not owed, but does so involuntarily because of statutory requirements, the taxpayer is entitled to a refund.

The Board argues that Inland's suggested "expansion" of the common law to include refunds of taxes not owed would subject local taxing authorities to unascertainable and unlimited refund claims because all refund claims by definition involve taxes that were allegedly not owed. The Board also notes that tax refunds are disruptive to government treasuries and are granted only as a matter of "legislative grace." *Revenue Cabinet v. Gossum*, Ky., 887 S.W.2d 329, 334 (1994).

■ Requiring a refund or credit of the excess tax Inland paid however, does not require an "expansion" of the common law since both the requirements of invalidity and involuntariness have been met in this case. The local regulation is invalid to the extent that it only allows taxpayers with an EDPA to claim the exemption and that it provides no regulatory scheme for a refund of excess tax paid prior to the time a taxpayer is eligible to obtain an EDPA. As such, the Mason County regulation improperly amends or enlarges the terms of the enabling statute, KRS 160.613(1). *See Linkous v. Darch*, Ky., 323 S.W.2d 850, 852 (1959) (holding invalid a regulation that attempted to amend or alter the terms of a legislative enactment). As a result, the Board is able via what appears to be an inadvertent procedural loophole to collect tax at a higher rate than that authorized. *See Martin Marietta*, 806 F.2d at 686 (Conte, J.., dissenting) ("By restricting application of the section 160.613(1) exemption to taxpayers who pay by the Direct Payment Method, the school board has placed itself in the position of being able to collect more taxes than authorized by the statute").

■ The law will presume that tax payments are made involuntarily or under duress when "a burdensome penalty may be exacted for failure to pay." *City of Louisville v. Louisville Taxicab and Transfer Co .*, Ky., 238 S.W.2d 121, 124 (1951) (*citing Coleman v. Western and Southern Life Ins. Co.*, Ky., 264 Ky. 210, 94 S.W.2d 601 (1936))); *see also Revenue Cabinet v. Gossum*, Ky., 887 S.W.2d 329, 332–333 (1994) (stating that a taxpayer is coerced into paying tax when financial sanctions may be imposed for nonpayment) (*citing McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990)) (stating that "when a tax is paid to avoid financial sanctions ... the tax is paid under 'duress' ").

■ Pursuant to KRS 160.648, a manufacturer is subject to mandatory sanctions for failure to submit its utility tax payments in a timely fashion. There are no provisions within KRS 160, nor in other relevant statutes, that allow the Board to negotiate the amount of tax, interest, or penalties owed by a taxpayer prior to collection of the tax. Thus, Inland paid the excess tax involuntarily. In summary, the mandatory penalty for non-payment, combined with the invalidity of the local regulation, allows Inland to obtain a refund or credit under common law principles.

■ The Board accurately points out that a similar request for a refund of local

utilities tax was adamantly rejected by the Sixth Circuit in *Martin Marietta*, and the Board urges this Court follow the Sixth Circuit. *Martin Marietta*, however, is distinguishable from this case because it involved a company that was an on-going enterprise. At one point, the company had permission to pay by the direct payment method, yet it let the permission lapse and did not seek it again for some time. The company, thus, had an opportunity to claim the exemption, yet failed to do so. The common law requirement that the payment be made involuntarily, therefore, was not met. Inland, on the contrary, was a new enterprise that had no opportunity to avail itself of the exemption until after a year of operation. At that time, the company requested and was granted an EDPA. Until then, it did not have the option of using the direct pay method. Although this Court recognizes the need of the school system to retain its fiscal integrity, equity requires that no taxing authority exploit a procedural loophole to gain a financial windfall at the expense of a taxpayer.

We must next address the Board's cross-claim against the Revenue Cabinet. The Board claims that Inland's belief that refunds were available was based in part on representations made to the company by the Cabinet, and thus the Board is entitled to pursue a claim for indemnity and/or contribution from the Cabinet. The Cabinet disagrees with this contention and argues that the doctrine of sovereign immunity prohibits claims by one state agency against another.

We need not determine whether one state agency may sue another, however. Even without sovereign immunity, the Commonwealth would have no liability on the school board's claims for indemnity or contribution. It appears that the Revenue Cabinet merely informed Inland that no EDPA could be obtained without one year of operating experience. Such information would appear to be truthful and hardly the type of behavior which would result in civil liability. Despite this, the school board collected the excess tax. Upon the eventual discovery that it was indeed in excess, the school board should reimburse or credit the taxpayer.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

COOPER, GRAVES, JOHNSTONE, KELLER, and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent because the Court of Appeals correctly reversed the summary judgment entered by the circuit court. Kentucky law precludes the right of Inland to recover utility taxes paid under the circumstances in this case. There is no statutory authority for a refund.

Pursuant to *Martin Marietta Aluminum, Inc. v. Hancock County Board of Education*, 806 F.2d 678 (6th Cir.1986), Inland must demonstrate that the taxes were invalid and involuntarily paid, or that the taxing authority engaged in misrepresentation. Inland cannot show any of these requirements and consequently is not entitled to a refund. The local utility tax and regulation are both valid. Inland was only required to prove that it had a right to the exemption. This does not cause the tax to be invalid. The local regulation is rationally related to the legitimate purpose of providing for state school finances.

The interpretation placed on *Great Atlantic and Pacific Tea Company v. City of Lexington*, Ky., 256 Ky. 595, 76 S.W.2d 894 (1934), by the Court of Appeals was correct. It applied to situations where there is no tax authorized and misrepresentations cause a taxpayer to pay the tax anyway. Inland was under no compulsion to pay the tax and voluntarily paid the tax without any protest.

The argument that Inland paid the taxes involuntarily because of KRS 160.648, which provides a manufacturer is subject to sanctions for failure to timely submit its utility tax payment is misplaced because that statute only provides penalty for taxes that are past due—that is—taxes owed but not paid, and not for "excess taxes." Inland, just as the taxpayer in *Martin Marietta, supra*, had several options to establish its right to the exemption which it did not explore. The availability of a judicial remedy by which to challenge the tax and the regulation, as well as a claim for exemption, and the lack of any immediate sanctions results in the taxes paid by Inland to be voluntary.