Rebecca SON, as Liquidating Agent of the Estates of Centennial Coal, Inc., Centennial Resources, Inc., CR Mining Company, and B–Four, Inc., Debtors, Plaintiff,

v.

COAL EQUITY, INC., et al., Defendants.

Civil Action No. 3:02CV–440–S.

United States District Court, W.D. Kentucky.

April 24, 2003.

Robert C. Chaudoin, Harlin & Parker, Bowling Green, KY, Christopher D. Loizides, John Henry Knight, Paul Noble Heath, Richards, Layton & Finger, PA, Wilmington, DE, for plaintiff.

Joseph H. Cohen, J. Gregory Troutman, Morris, Garlove, Waterman & Johnson, Louisville, KY, Brett Fallon, Christina M. Maycen, Morris, James, Hitches & Williams, LLP, Wilmington, DE, Penny R. Warren, Mickey T. Webster, Wyatt, Tarrant & Combs, Lexington, KY, for defendant.

### MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the court on motion of the defendant, Louisville Gas & Electric Company ("LG & E"), to dismiss the Amended Complaint and Coal Equity's Cross–Claim against it (DN 49).

#### Facts

The facts underlying this adversary proceeding were set out in detail in the memorandum opinion of the United States Bankruptcy Court for the District of Delaware which granted LG & E's motion to transfer venue to this court. This court has granted the motion of the defendant, Coal Equity, Inc., for withdrawal of the reference of the adversary proceeding. We will briefly revisit the factual background, borrowing from the Delaware bankruptcy court opinion and the amended complaint.

Centennial Coal, Inc., Centennial Resources, Inc. ("CRI"), CR Mining Company and B–Four Inc. (collectively, "Debtors") filed voluntary petitions for relief

under Chapter 11 of the Bankruptcy Code on October 13, 1998. Pursuant to the terms of the liquidating plan, Rebecca Son, as liquidating agent of the debtors' estate, succeeded to the right of the committee of unsecured creditors to pursue bankruptcy actions on behalf of the estate.

This adversary proceeding was commenced on October 12, 2000 by the committee. It is based upon an alleged breach of a coal marketing and sales agreement between Coal Equity and one of the debtors, Coal Resources, Inc. ("CRI")(the "sales agreement"), and a related coal supply agreement between Coal Equity and LG & E (the "supply agreement").

CRI was engaged in the mining, marketing and sale of bituminous coal in western Kentucky. Coal Equity is in the business of selling coal, brokering sales between buyers and sellers. LG & E is an electric utility which purchases and burns coal.

Pursuant to the terms of the sales agreement, CRI agreed to supply coal sold by Coal Equity to LG & E. The agreements required deliveries of certain quantities and qualities of coal to LG & E at specified times.

By letter dated April 17, 1997, CRI informed Coal Equity that it could no longer ship coal to LG & E, and asserted the *force majeure* provision of the sales agreement. In turn, by letter dated April 21, 1997, Coal Equity (1) provided LG & E with a copy of the *force majeure* letter, (2) indicated that it wished to work out a new agreement whereby LG & E could recoup the lost value under the supply agreement, and (3) stated that it would include in the proposed new agreement any penalties that resulted from Coal Equity's exercise

of its right of early termination under section 11 of the supply agreement.

By letter dated April 29, 1997, LG & E notified Coal Equity that it believed that Coal Equity was in default of the supply agreement by its failure to comply with LG & E's delivery schedule. LG & E indicated that it did not accept that the failure was excused by *force majeure* events. Also in the letter, LG & E acknowledged receipt of an invoice for previous coal deliveries. It stated that it had incurred damages in excess of that amount, and expected to incur additional damages as a result of future non-performance. It indicated that it would withhold payment of the invoice until some sort of resolution was reached. LG & E also rejected terms which had been proposed for a new agreement, and indicated that it would prepare a counter-proposal.

Negotiations continued for many months as the parties tried to reach an agreement permitting a new supplier to make up the shortfalls. No agreement was ever executed by the parties.

In this adversary proceeding, CRI[1] initially sought to recover $236,812.14 plus interest from Coal Equity allegedly due in connection with the unpaid invoice. Apparently, despite the initial withholding by LG & E of in excess of $900,000, various payments were made among the parties, reducing the purported indebtedness to CRI to the above-stated sum. On April 20, 2002, CRI filed an amended complaint joining LG & E as a defendant, seeking turnover of the amounts due for unpaid invoices (Count I), alleging breach of contract (Count III), and alternatively claiming entitlement to recovery under a theory

---

1. The adversary proceeding has been brought in the name of the "estate agent," on behalf of the estate of the four debtors, seeking to recovery assets for the estate. For purposes of this opinion, however, the plaintiff will hereafter be referred to as CRI, as it is this debtor to whom the amounts in question are allegedly owed.

of unjust enrichment/quantum meruit (Count IV).

On April 29, 2002, Coal Equity filed its answer and asserted a cross-claim against LG & E for indemnity and/or contribution to the extent that Coal Equity is found liable to CRI for any sums with respect to coal shipments delivered to LG & E between March 29, 1997 and April 24, 1997, in the approximate value of $321,812.73.

*Law*

I.

LG & E has moved to dismiss the amended complaint and cross-claim against it. When a motion to dismiss is made, the court must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

CRI contends that the court should not consider the correspondence submitted as exhibits to the motion to dismiss, as these documents are matters outside the pleadings. Fed.R.Civ.P. 12(b). But, as noted in *Greenberg v. The Life Insurance Company of Virginia,* 177 F.3d 507, 514 (6th Cir.1999),

> Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. *See,* 11 James Wm. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed.1998). This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim ..." *id.* In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.; see, e.g., Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir.1997)(considering

pension plan documents that defendant attached to the motion to dismiss part of the pleadings because the documents were referred to in the complaint and were central to plaintiff's claim for benefits under the plan).

The court concludes that only one document submitted by LG & E, the April 29, 1997 letter, which is specifically referenced in paragraph 21 of the Amended Complaint, need be considered by the court in disposing of this motion to dismiss. The court finds that this letter is central to CRI's claim of breach of contract against LG & E, and therefore, it may be considered part of the pleadings herein.

CRI alleges that LG & E breached the supply agreement by failing to pay for a number of shipments of coal. LG & E's obligation to pay under the contract ran to Coal Equity, but CRI contends that it may sue for this breach as a third-party beneficiary of the agreement. LG & E has not challenged CRI's standing to bring the claim.

On April 29, 1997, LG & E notified Coal Equity that it considered Coal Equity to be in default of the supply agreement, for failure to comply with the delivery schedule. It informed Coal Equity that it was withholding payment of the most recent invoice in the amount of $987,828.73 as a partial offset of the damages it had incurred to date, and in expectation of additional damages it expected to incur as a result of Coal Equity's continuing default.

As an initial matter, we must determine which statute of limitations applies in this case. LG & E argues for application of the four year statute of limitations in KRS 355.2–725 for breaches of contracts which are governed by the Kentucky Uniform Commercial Code ("UCC"). CRI suggests that the five year limitations period for open accounts, KRS 413.120(10),

should govern. CRI and LG & E agree that either statute could apply to contracts of the type at issue here.

KRS 355.2–725 applies to contracts for the sale of goods, as defined in KRS 355.1–101, *et seq.* Both LG & E and CRI look to KRS 355.2–107(1) concerning goods to be severed from realty to conclude that the coal under this contract is "goods."

KRS 355.2–107(1) provides that "[a] contract for the sale of minerals or the like ... to be removed from realty is a contract for the sale of goods within this article if they are to be severed by the seller ..." The Commentary to 2–107(1) indicates that this provision affords a different treatment of the agreement depending upon whether the mineral or other substance will be severed by the buyer or the seller. 1 Hawkland Uniform Commercial Code Series § 2–107:1; *see also, Tousley–Bixler Construction Co., Inc. v. Colgate Enterprises,* 429 N.E.2d 979, 981 (Ind. App.1982)("Thus the UCC considers the sale of some items affixed to real estate as a sale of goods if they are to be severed by the seller ... If the seller is to sever ..., they are treated as goods because they would more likely be intended for sale after severance.")

The contract in issue here is a brokerage agreement between Coal Equity and LG & E which contains specific provisions for CRI, the mining company, to provide the specific quantities and qualities of coal required by LG & E. Thus the contract appears to satisfy KRS 355.2–107(1) as CRI was to sever the coal on behalf of Coal Equity. It could be argued, however, that 2–107 does not apply to this contract as the coal was not attached to realty at the time of its identification to the contract. However, the contract would still come under the UCC, as involving the sale of something moveable at the time of identification to the contract. *See,* KRS 355.2–105(1).

■ CRI urges the court to apply the statute of limitations for merchant accounts, KRS 413.120(10), rather than the UCC statute. Its basis for this contention is without merit because its position is inconsistent with the stated purpose of the UCC. The adoption of the UCC with its own statute of limitations for the sale of goods was "to introduce a uniform statute of limitations for sales contracts ....[by] tak[ing] sales contracts out of the general laws limiting the time for commencing contractual actions and select[ing] a four year period as the most appropriate to modern business practice." UCC 2–725, Official Comment; *see also, Farm Credit Bank of Louisville v. United States Mineral Products,* 864 F.Supp. 643 (W.D.Ky.1994)("The enactment of the U.C.C. in Kentucky was a clear expression of legislative intent to occupy the field of commercial transactions. [citation omitted].")

■ KRS 355.2–725 provides

(1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued ...

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.

The alleged breach was the failure of LG & E to pay for coal shipments. In accordance with the Code, payment was due at the time provided in the agreement. KRS 355.2–310. Payment for the last shipments of coal was due no later than the 20th of the month following the month of unloading, in April and May of 1997. Supply Agreement, Section 7.2. LG & E claimed in its April 29th letter that Coal Equity had breached the contract. At that time, Coal Equity was on notice that LG &

E was withholding payment of the outstanding invoice. Therefore, the four year statute of limitations ran almost one year prior to the April 17, 2002 filing of the amended complaint adding LG & E as a defendant.

CRI urges that its cause of action did not accrue until at least June of 1998, since it was not until that time that LG & E manifested an intent never to pay for the coal. CRI does not claim that it was misled, or that LG & E engaged in settlement negotiations in bad faith. CRI contends that in approximately June of 1998, when a settlement had not been reached regarding a new supplier, it became "apparent that LG & E would not accept Kindill or any other contractor as a substitute for CRI under restated versions of the LG & E Contract and the Coal Equity Contract. Complaint ¶ 29. LG & E's conduct in July 1998 showed that it had determined that it was no longer merely withholding payment under section 7.4 pending resolution of the dispute; rather, it was then apparent that LG & E had decided not to pay for the Coal under *any* circumstances." Plaintiffs' Memorandum in Response to LG & E's Motion to Dismiss, pg. 7 [emphasis in original].

We note that the April 29, 1997 letter does not specifically invoke a right to withhold payment under section 7.4 of the agreement. The amended complaint does not misrepresent this fact. It avers that "LG & E informed Coal Equity that ... LG & E would withhold payment ... *purportedly* as cover under section 7.4 of the LG & E Contract." Amended Complaint, ¶ 21 [emphasis added]. In other sections of the letter, LG & E specifically referred to sections of the agreement upon which it was relying. In providing notice that it would not pay the outstanding invoice, there is no reference to a contractual provision.

Section 7.4 states that "[b]uyer shall have the right to withhold from payment of any billing or billings the amount of any sums which it is not able in good faith to verify or which it otherwise in good faith disputes, such right to withhold to continue for the duration of the dispute or inability to verify." There was no suggestion that the withheld amount could be verified or that the billing for the coal already delivered was disputed. The parties agree that the coal for which LG & E was billed was delivered in March and April of 1997, was accepted and used by LG & E, and was billed to LG & E in the ordinary course. LG & E withheld funds to offset the damages it contended that it incurred as a result of the alleged breach of contract. Thus, on its face, the provision appears to be inapplicable.

Were LG & E to have withheld the sums under section 7.4, however, CRI's argument would still fail to carry the day. The act of breach—the withholding of the sums as they became due—is unaffected by the negotiation provisions of section 7.4. Section 7.4 provides the buyer the option to withhold, upon giving proper notice. The provision indicates that the right to withhold continues for the duration of the dispute. Thus taking CRI's allegations as true, we cannot accept its argument that the negotiation process must be exhausted before a claim for withholding payment ripens. Arguably, CRI's cause of action for breach of contract would never accrue because in this case the underlying dispute was never resolved. Further, the last sentence of section 7.4 states that "[p]ayment by Buyer ... of any amount in dispute shall not be deemed a waiver of any claims or rights by Buyer with respect to any disputed amounts or payments made." The contract provision clearly indicates that regardless of whether the buyer withholds payment or not, the parties may

negotiate their disputes, as they did in this case.

Finally, CRI's assertion that an "apparent" failure of the negotiation process triggers the accrual of a cause of action for breach of the obligation to pay is contrary to KRS 355.2–725(2) which states that a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.

Based upon the foregoing analysis, the court concludes that the claim for breach of contract against LG & E (Count III of the Amended Complaint) is time-barred and must be dismissed.

■ LG & E has also moved to dismiss Count IV of the Amended Complaint which asserts an "unjust enrichment/ *quantum meruit*" theory of recovery as against it. There is an express contract for payment. There is no allegation that the contract in issue is void or unenforceable. In fact, CRI relies upon the validity of the contract in pursuing its claims in this case. CRI acknowledges that an element of a claim for *quantum meruit* is that there is no valid, existing contract governing the issue of payment for the goods. *See,* 66 Am.Jur.2d, *Restitution and Implied Contracts,* § 38 (2001). The claim for unjust enrichment/ *quantum meruit* (Count IV) must therefore be dismissed as to LG & E.[2]

## II.

LG & E has moved to dismiss the cross-claim for indemnity against LG & E for all sums Coal Equity might be required to pay to CRI under the sales agreement. Coal Equity contends that it is entitled to recover such sums from LG & E for its failure to pay the amounts due to it under the supply agreement. A claim by Coal Equity for breach of contract would be barred for the same reason that such claim by CRI as a third-party beneficiary of the contract has been found to be barred. However, Coal Equity contends that its indemnity claim will ripen if and when it is found liable to CRI. Thus it urges that the statute has not run on this claim.

LG & E seeks dismissal of the claim on the ground that an implied indemnity claim is not available for redress of a garden variety breach of contract. We agree.

■ We have found no Kentucky case on point. In the absence of an express provision for indemnity, implied indemnity will be found only in limited circumstances. In the jurisdictions recognizing implied indemnity, it has been found that "[t]he burden of establishing an implied agreement to indemnify is a heavy one, especially in business relationships where parties are free to negotiate for express indemnification clauses. [citations omitted]." *The City of New York v. Black & Veatch,* 1997 WL 624985 (S.D.N.Y.1997). In the case of *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,* 782 F.2d 346 (2d Cir. 1986) the court noted that an implied right of indemnification can be found where (1) there is a special contractual relationship between the parties, or (2) where there is a great disparity in the fault of two tortfeasors and one tortfeasor has paid for loss which was primarily the responsibility for the other. In *Goodpasture,* as here, tort-based indemnification does not apply. *Goodpasture* involved damage claims arising under contracts for the sale and delivery of grain. The court found "nothing

---

**2.** Count IV is brought against both defendants. The claim is dismissed only as to LG & E, as CRI's claims against Coal Equity derive, in part, from an additional contract, the sales agreement, the validity and enforceability of which has not been addressed in this motion.

special about the contractual relationship between Goodpasture and Yemen that would warrant implying in fact a contract for indemnification" in what the court characterized as "fairly ordinary commodities contracts." *Goodpasture*, 782 F.2d at 351. The court noted that "[i]f an implied contract for indemnification were to be found here, one would have to be found in nearly every commodities sale contract that lacked a clause excluding it, a result that would reverse all standard contract and indemnity law." *Id.*

■ We find nothing to distinguish the case before us from *Goodpasture*. There is no special relationship between Coal Equity and LG & E which would warrant implying indemnity where the parties chose not to expressly incorporated such a provision. This is a garden variety supply agreement. It contains an indemnity provision in favor of LG & E, but not a provision for the benefit of Coal Equity. Clearly the parties contemplated indemnity protection, choosing to provide it only for LG & E. This militates against our implying such a provision in favor of Coal Equity.

The facts before us can be distinguished from the few cases in which a special relationship has been found. In *General Electric Co. v. Moretz*, 270 F.2d 780 (4th Cir.1959), *cert. denied*, 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1960), a truck driver was injured when the load he was transporting shifted and the truck wrecked. The driver sued the shipper who had negligently loaded the truck, and the shipper in turn sued the common carrier who had failed to secure the load properly. The court read certain Virginia and federal statutes and ICC regulations into the contract between shipper and carrier.

The court found that the incorporation of these provisions established a special contractual relationship giving rise to an implied right of indemnity. *Cf., International Surplus Lines Insurance Company v. Marsh & McLennan, Inc.*, 838 F.2d 124 (4th Cir.1988)(no special relationship recognized in ordinary insurance brokerage arrangement, rejecting application of *Ryan* and *Moretz*).

The seminal case on implied contractual indemnity is *Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) in which a special contractual relationship was found between the shipowner and the stevedoring company under maritime law. The court in *Goodpasture, supra.*, considered the *Ryan* case and others in its analysis, but concluded that no special relationship existed on the facts before it. Our research concerning the application of this principle in other jurisdictions indicates that it has been "widely rejected outside the maritime context. Numerous courts have suggested that *Ryan* must be strictly confined to salt water, or at least amphibious applications. [citations omitted]." *When Can an Implied Indemnity Cause of Action be Used to End–Run a Limitations Bar?*, F.I.C.C. Quarterly, Fall 1991, pgs. 38–39.[3]

There are no Kentucky cases discussing implied contractual indemnity, but *Inland Container Corporation v. Mason County Bd. of Education*, 6 S.W.3d 374 (Ky.1999) has been cited by the plaintiff to suggest that Kentucky courts would recognize such a claim. We find *Inland Container* to be unhelpful in ascertaining whether Kentucky courts whether such a cause of action would be viable. The court did not

**3.** The article further notes that "[m]oreover, although the *Ryan* doctrine lives on, its result was legislatively overruled by the 1972 amendments to the Longshoremens' and Harbor Workers' Compensation Act, 33 U.S.C. sec. 905 (1982)." *Id.* at pg. 39.

400

address the viability of such a cause of action in that case, but rather found that, on the facts before it, there could be no liability. *See, Id.* at 379.

The Supreme Court of Kentucky has held that the common law right of indemnity among joint tortfeasors not in pari delicto survived the adoption of comparative fault in Kentucky. *Degener v. Hall Contracting Corporation*, 27 S.W.3d 775, 780 (Ky.2000). However, the court is not convinced that Kentucky courts would recognize an indemnity claim in a contract action such as this. The particulars of this contractual relationship did not create a special contractual relationship in any event, even if such a cause of action was found to be viable. The cross-claim of Coal Equity for indemnity will therefore be dismissed. A separate order will be entered this date in accordance with this opinion.