226        METCALFE'S REPORTS.

City of Covington vs. Powell.    Same vs. Elliston.

CASE 45—JULY 13.

# City of Covington vs. Powell.
# Same vs. Elliston.

APPEALS FROM KENTON CIRCUIT COURT.

1. It may now be regarded as well settled in this State that when money has been paid through a clear and palpable mistake of law or fact, essentially affecting the rights of the parties, which in law, honor, or conscience was not due and payable, and which ought not to be retained by the party to whom it was paid, it may be recovered back.    (4 *Dana,* 309; 3 *B. Mon.,* 513; 1 *Met.,* 153.)

2. Money voluntarily paid by one who knows he is not bound to pay, cannot be recovered back.    (18 *B. Mon.,* 799, *and authorities there cited.*)

3. Pleadings are to be most strongly construed against the party pleading; and words of a doubtful character, or words used in an equivocal sense, are to receive an interpretation unfavorable to the party using them.

4. In two actions against a city corporation, each petition charges directly that the money sued for was paid by the plaintiff as taxes based upon an illegal assessment of his surplus made by the city, and in ignorance of his rights or of the fact that such assessment was illegal, but that he believed at the time that it was legal and collectable.    The answer to one petition merely says in effect that the plaintiff was apprised of the *existence* of the law and the *facts* in relation to said assessment; and with such

City of Covington vs. Powell.  Same vs. Elliston.

knowledge went forward and voluntarily paid the tax, and in the year 1856 went to the assessor and required him to assess his surplus for that year. The answer to the other petition alleges that the plaintiff assented to the assessment, and with a full knowledge of "*the law and facts*" in relation to said tax, voluntarily and of his own accord paid the taxes, if at all, to the city. *Held*—That the answers are equivocal and evasive, and insufficient upon demurrer.

5. A benefit derived by a party, in common with other inhabitants of a city, from general improvements of roads, streets, wharves, &c., and a consequent increase of business to such city, is not such a consideration as will estop him from recovering from the authorities of the city money that he has ignorantly paid upon an illegal or unauthorized assessment of taxes expended in such improvements.

6. The provisions of the charter of a city, authorizing a tax "upon such real and personal estate" as the city authorities might designate, do not allow a tax upon *choses in action* belonging to the inhabitants of the city. The words "real and personal estate," as thus used, refer only to *visible* property, and such as is actually within the city at the time of assessment.

These two several actions were brought against the city of Covington by the plaintiffs to recover money alleged by them to have been paid for several years, in ignorance of their rights, &c., upon an illegal assessment of taxes by the city " on what the defendant termed '*surplus*,' which means the excess of all the claims held by the plaintiff in the years aforesaid over his just and proper debts, according to the equalization laws of Kentucky." A judgment having been rendered for the plaintiff in each action, the city has appealed.

R. SIMMONS, for appellant, cited *sec.* 1., *art.* 5, *City Charter, as amended March*, 1850 ; *Civil Code, sec.* 859 ; *Chitty on Contracts, p.* 633 ; 4 *B. Mon.*, 178; 4 *Dana*, 309; 3 *B. Mon.*, 510; 15 *B. Mon.*, 491 ; *Elliott vs. Swartwout*, 10 *Peters*, 150 ; *Mays vs. City of Cincinnati*, 1 *Ohio State Rep.;* 5 *Taunt.*, 143; 10 *Ad. & El.*, 82; 3 *Mees. & Wels.*, 644 ; 5 *Law and Equity Rep.*, 470 ; 4 *Met. Mass. R.*, 181 ; 9 *Cow.*, 674; 7 *Hill*, 159 ; 4 *Denio*, 308; 2 *Saund.*, 475; 4 *Gill*, 425; 5 *Ib.*, 244 ; 4 *Rich. R.*, 317 ; 27 *Maine Rep.*, 145.

MENZIES & PRYOR, for appellees, cited 14 *B. Mon.*, 648; *Charter of Covington, approved February* 24*th*, 1834, *and amended charter of* 1850.

D. MOOAR, on same side, cited *Act of March*, 1850, *amending the Charter of Covington;* 14 *B. Mon.*, 648; 3 *B. Mon.*, 510; 4 *Ib.*, 178; 15 *Ib.*, 491; 4 *Dana*, 309.

JUDGE STITES DELIVERED THE OPINION OF THE COURT:

These two cases present substantially the same questions, and will be disposed of together.

The petitions each disclose a substantial cause of action, and the only matter to be considered is the sufficiency of the answers.

The answer to Elliston's petition contains two paragraphs. The first denies the payment of the money as alleged, and was held good ·on demurrer, but it was afterwards withdrawn. The second paragraph sets up substantially the same defense that is presented in the answer to Powell's petition, varying but in one respect, which will be noticed hereafter.

A demurrer was sustained to the second paragraph, and also to the entire answer of the city to Powell's petition, and judgments were rendered for the amounts claimed in each.

We have no hesitation in saying that the second paragraph of the answer to Elliston's petition, and the entire answer to that of Powell, were both insufficient, and properly so held on demurrer.

It may be now regarded as well settled in this State that when money has been paid through a clear and palpable mistake of law or fact, essentially affecting the rights of the parties, which, in law, honor, or conscience, was not due and payable, and which ought not to be retained by the party to whom it was paid, it may be recovered back. (4 *Dana*, 309 ; 3 *B. Mon.*, 513 ; 1 *Met.*, 153.)

The petitions in these cases charge directly that the money paid by the plaintiffs was paid as taxes based upon an illegal assessment made by the city, and in ignorance of their rights or of the fact that such assessment was illegal, but that they believed at the time that it was legal and collectable.

The defense relied on in the answer and paragraph alluded to· is, not that the assessment was legal or valid, but that the plaintiffs were apprised of the law and facts when they paid the taxes, and with such knowledge made the payments voluntarily; and also, that they, in common with other inhabitants of the city, had enjoyed benefits from improvements made by the money collected under the assessment, and had thus

received a consideration which should preclude them from a recovery.

If, as is contended, the answers do sufficiently show that the plaintiffs made the payments with a knowledge of their legal rights to resist the collection of the tax, no doubt could be entertained that they would be precluded from a recovery; for it has been expressly settled by this court that money thus voluntarily paid by one who knows he is not bound to pay, cannot be recovered back. (*Tyler vs. Smith*, 18 *B. Mon.*, 799, *and the authorities there cited*.)

It seems to us, however, that the answer and paragraph do not present such a defense, but, on the contrary, that upon this point they are evasive, and do not respond to the petitions.

The answer to Powell's petition, instead of meeting fairly the allegation that he was ignorant of his rights when he paid the money, and believed then that the assessment was valid, and that the city had authority to make it and collect the taxes, when, in point of fact, it had no such power, merely says in effect that he was apprised of the *existence* of the law and the *facts* in relation to said assessment, and with such knowledge went forward and voluntarily paid the tax, and in the year 1856 went to the assessor and required him to assess his surplus for that year. In this last particular only does it vary from the answer in the Elliston case.

Now this may be all true, and yet the plaintiff entitled to recover, for it is nowhere said that he was apprised of the alleged illegality of the assessment, or of the want of authority on the part of the city to make it or collect the tax.

Or, in other words, he may have been familiar with the mere existence of the enactment under which the assessment was made, and the facts which gave rise to the assessment, but yet profoundly ignorant of the scope or effect of the enactment, or that the city had no authority under it to assess and levy the tax complained of.

He had the right to suppose that the city authorities would conform to the law in their assessments; and believing, as he alleged, that the tax was legal, it was but his duty to go forward promptly and pay what was or might be properly assessed

against him.   Such promptitude and obedience should not, nor can it, prejudice his right to reclaim the money paid, if paid wrongfully and in ignorance of his rights.

The allegation of the petition alluded to should have been responded to either by direct denial, or by such matters as would avoid its legal effect.

So with regard to the second paragraph of the answer to Elliston's petition.   It is also evasive in regard to his allegation of ignorance of his rights and the invalidity of the assessment.

It alleges that he assented to the assessment, and, with a full knowledge of *"the law and facts"* in relation to said tax, voluntarily and of his own accord paid the taxes, if at all, to the city.

The rule is, that pleadings are to be most strongly construed against the party pleading; and that words of a doubtful character, or words used in an equivocal sense, are to receive an interpretation unfavorable to the party using them.

Now, it may be literally true that Elliston had knowledge of "the law" under which the assessment was made, and was familiar with its phraseology, and yet ignorant of its scope and effect.   The words used may signify merely the enactment, or they may mean not only the enactment itself, but also its effect and operation.   As used in the present connection they are equivocal, and should therefore be construed to import nothing more than the enactment in relation to said tax, and the allegation as signifying merely that he was familiar with the existence of such law or enactment, and the facts in relation thereto.

If the pleader had intended anything more than that, it would have been very easy for him to have controverted the allegation of the plaintiff by a direct denial that he was ignorant of his legal rights, or of the invalidity of the assessment, and thus put in issue the most important and essential fact in the case, to-wit: the alleged mistake and ignorance of the plaintiff in making the payment.

This he failed to do, and, in our opinion, the answer and paragraph in question are clearly defective as to this branch of the defense.

With regard to the alleged consideration received by the plaintiffs for the taxes paid, we have to say that the pleadings disclose no consideration sufficient, in our opinion, to preclude a recovery.

A benefit derived by a party, in common with other inhabitants of a town or city, from general improvements of roads, streets, wharves, &c., and a consequent increase of business to such town or city, is not such a consideration as will estop him from recovering from the authorities of the city money that he has ignorantly paid upon an illegal or unauthorized assessment of taxes. To deny redress in such cases because the money has been appropriated for the use of the local public, and may have thus indirectly inured to the benefit of the party complaining, would be a doctrine both novel and dangerous, and might invite acts of oppression and tyranny under the plea of conferring benefits.

If, as in the case of *Louisville vs. Zanone*, (1 *Met.*, 153, *supra*,) it had appeared that the appellees, or either of them, had received any special and direct benefit from the money paid, because of its having been expended in improving their property especially; and their assent to, or acquiescence in, such appropriation and improvement could have been reasonably inferred from the facts, then a court might very properly refuse its aid in an action to recover back the money claimed, though the same was paid by mistake, or in ignorance of the party's legal rights. But such does not appear to have been the case here, and the principle on which the decision in that case rests, is, therefore, not applicable to this.

Although the city has not, in the answers just considered, alleged that the assessment complained of was legal and valid—and its validity may therefore be said not to be directly involved in the issues made by the pleadings—yet, inasmuch as it has been discussed by counsel, and treated as involved in the appeal, it will be proper to notice it.

It seems to us that upon this point the case of *Johnson vs. City of Lexington*, (14 *B. Mon.*, 648,) is conclusive.

The provisions of the charters of Lexington and Covington, with respect to the power to assess and collect a tax upon debts

and *choses in action,* are substantially alike; and in the case *supra* it was held that the sections of the charter of Lexington authorizing a tax "upon such real and personal estate" as the city authorities might designate, did not, as was contended, allow a tax upon *choses in action* belonging to the inhabitants of the city; but, on the contrary, that the words "real and personal estate," thus used, referred only to *visible* property, and such as was actually within the city at the time of assessment.

The assessment complained of here was under a similar grant of power, and is of a like character to that involved in the case alluded to; both the reasoning and conclusion of the court in that case apply with full force to this, and it is, as has been said, conclusive of the question, and determines the assessment to be invalid.

Our opinion, therefore, is, that there is no error in either judgment complained of, and that both should be affirmed.

Judgments *affirmed.*