LOUISVILLE & NASHVILLE R. CO. *v.* JACOB KEYER AND OTHERS.

**Equity—Estoppel.**

Where persons with full knowledge of their rights accepted less than they have a right to demand, or adopted the construction placed upon the charter by the company, upon which the demand was made, they cannot obtain relief in a court of equity.

**Railroads—Tax Receipts—Waiver of Right to Stock.**

Tax receipt holders were held to have waived their right to stock on accrued interest on their tax receipts by surrendering the receipts and receiving stock for the face of the receipts.

APPEAL FROM LOUISVILLE CHANCERY COURT.

June 27, 1873.

OPINION BY JUDGE PRYOR:

After a careful consideration of the pleadings and proof in this cause we must adjudge that the appellees are not entitled to a judgment. The evidences of their right to demand certificates of stock from the company consisted in the receipts for taxes paid by the appellees and their assignors in discharge of the subscription of stock taken by the city under the ordinance approved June 17, 1871, and other ordinances of later date. These receipts, when endorsed by the city, entitled the holders and owners upon their presentation to the company or its secretary to certificates of stock. It

is clearly established by the evidence that the railroad company as early as the year 1854 and continuously from that time until the institution of this action in March, 1870, or a short time prior thereto, declined to allow any interest upon these receipts for taxes from the time of payment up to the 1st of April, 1862, when the first dividend was declared. There is no proof, it is true, of any public announcement made by the company that this interest would not be paid or of any demand and refusal to allow the interest when the receipts were presented and the stock issued. The only evidence apart from the statements contained in the petition of the appellees in regard to this refusal to pay the interest is to be found in the constant practice of the company running through a period of fifteen years or more and up to the bringing of this action in not allowing any interest on these tax receipts, and in its issuing stock only for the amount of money called for in the receipt presented. This sale was adopted by the company in accordance with its construction of the fifth section of the amended charter of the company and the ordinances under which the subscriptions of stock were made. This construction seems to have been acquiesced in by the many thousand taxpayers of the city of Louisville without any objection whatever until the year 1870, and in the production of their receipts to the secretary of the company all of them so far as this record shows, including these appellees, only required a certificate of stock for the amount actually paid, or at least failed to demand any interest thereon. It may be that this acquiescence on the part of the taxpayers was caused by the ignorance on their part of the existence of this right to demand interest by reason of the fifth section of the amended charter of the company, and if at the time this stock was issued and the receipts delivered up, the holders were ignorant of their legal rights, and labored under a mistake as to the amount of stock they were entitled to, we would not hesitate to concur in the views expressed by the chancellor that a court of equity upon the presentation of such a case would grant the relief asked for. It is hardly to be presumed, however, that in the midst of such a population as that of the city of Louisville that all the taxpayers would rest so long upon their rights, without even investigating the questions out of which originated this claim upon a court of equity for relief. The delivery of these receipts and the acceptance of the certificate of stock certainly evidences a set-

tlement between these parties. There was no reservation of the question as to their right to interest made at the time, but the stock taken, impliedly at least, was in full discharge of all their claims upon the company. The receipts would not have been surrendered if it was only a partial settlement of the rights of the parties.

If the appellees had held the notes of the company having interest and surrendered them in the same way without demanding the interest, at least when the right to interest is doubtful, such a transaction would be regarded as final by the chancellor and no recovery could be afterwards had of the interest without some allegation and proof of either fraud or mistake. When an instrument has been cancelled or delivered up under a mistake of the party and in ignorance of the facts material to the rights claimed under it, a court of equity will grant relief upon the ground that the party is conscientiously entitled to enforce such rights. 1 Story Equity 167. Whenever there has been a palpable mistake of law or fact, and by reason of such mistake one has surrendered something of value, for which he has received no consideration, a court of equity will relieve. *Underwood v. Brockman,* 4 Dana 309; *Covington v. Powell,* 2 Met. 226.

It becomes material, therefore, to inquire into this case, whether the chancellor has been called on to grant relief upon the ground that the appellees have been deprived of what they were legally and justly entitled to, by reason of their ignorance of either the law or facts upon which they acted, when they surrendered their claim to this interest. It is alleged in the petition that the company "has refused in every instance to issue stock for said interest which has accrued prior to April, 1862. That when said certificates were demanded, the company, instead of calculating the interest on said tax receipts, from the time of payment until the 1st of April, 1862, when the first dividend was declared, and issuing stock therefor, refused to do so and only issued stock for the face of the receipts."

The appellees here allege a knowledge on their part of their right to this interest and the refusal of the company to pay it; with this knowledge of these rights they voluntarily surrendered to the company their receipts and accepted only so much stock as the face of the receipts entitled them to. If they saw proper when fully apprised of these rights to accept less than they had the right to demand, or adopted the construction placed upon the company's char-

ter, that the company itself had, it is now too late to call on the chancellor for aid. The conclusion is inevitable from the appellees' own showing that they either adopted this construction of the charter or surrendered their rights to demand interest by delivering up the receipts when they settled with the company, knowing that they were entitled to more than they received. It is nowhere alleged that there was any mistake of law or fact in any of the transactions between these parties, and the chancellor is not called upon to give the relief on any such ground. The views here taken render it unnecessary to determine the other questions presented.

## ON PETITION FOR REHEARING.

Since the rendition of the above opinion a petition for rehearing has been filed calling the attention of the court to the fact that receipts for taxes had been filed with the petition that had never been surrendered to the appellant amounting to $549.69, and that the company had refused to issue certificates of stock for these receipts with the accrued interest. These receipts were overlooked doubtless for the reason that they were not alluded to by counsel either in their oral argument or briefs. After a careful consideration of the additional suggestions made by counsel for the appellee as to the proper construction of the ordinance of 1851, and the fifth section of the amended charter of the company with reference to the claim for interest on the tax receipts exhibited, we must adjudge that the only construction that can render these enactments effectual and at the same time practical is to require the taxpayer to have his receipt properly endorsed or authenticated by the city so that its genuineness may be known, and if upon presentation to the company, it shall be the duty of the latter to issue certificates of stock for the amount and upon a refusal to do so interest will begin to run. With the presentation of such a voucher to the company the party should then, and not before, be regarded as the holder of stock and entitled to a certificate for the amount of his receipt, with the dividends that have been previously declared. The taxes are collected at various times, almost every receipt bearing a different date. These sums of money arising from this collection must necessarily be paid into the city treasury at different times, or to the official entitled to receive it, and may not reach the treasury of the company for months after its collection. The taxpayer

with his receipt has no right to demand stock for its amount from the company until his right to it is recognized by the city. It is imposing no great burden upon him to have this voucher made in order that he may present it for a certificate of stock before giving him the right to demand interest, and is certainly more equitable than to require the company to pay interest, when if the receipt was presented not properly authenticated no stock could be issued for it. There is no equity in fixing any particular day, when interest shall commence to run, as the taxpayer may not have paid his tax, or if paid the company may not have received the money. If the tax is unpaid the claim should bear no interest and if it has not been paid to the company it should not account for interest. The city by its officials must first ascertain the amount of stock each taxpayer is entitled to and when this is done and presented to the company it is in a condition for the first time to issue stock in lieu of the tax receipts. This construction the city, taxpayers, and company have given these enactments continuously since 1854, and as it is the only practical view to take of the questions presented, the judgment of the court below must be reversed and cause remanded with directions to dismiss appellees' petition; this, however, will not be done until the appellant tenders into court or delivers to the appellee certificates of stock with the dividends for his receipts exhibited amounting to $549.69, etc., when this is done the dismissal will be at appellees' costs.

*Caldwell, Houston,* for appellant.

*Barr & Goodloe,* for appellee.