RENDERED:  MAY 5, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0191-MR

T-MOBILE SOUTH LLC (D/B/A T-
MOBILE USA), SUCCESSOR-IN-
INTEREST TO POWERTEL
MEMPHIS, INC.                                                                APPELLANT


|  | APPEAL FROM FRANKLIN CIRCUIT COURT |
|---|---|
| v. | HONORABLE PHILLIP J. SHEPHERD, JUDGE |
|  | ACTION NOS. 09-CI-01436 & 15-CI-01124 |


KENTUCKY COMMERCIAL MOBILE
RADIO SERVICE EMERGENCY
TELECOMMUNICATIONS BOARD
(N/K/A KENTUCKY 911 SERVICES
BOARD)                                                                            APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, ECKERLE, AND KAREM, JUDGES.

CALDWELL, JUDGE:  T-Mobile South LLC ("T-Mobile") appeals from a

Franklin Circuit Court judgment concluding that T-Mobile was not entitled to a

common law refund of, or interest on, over $600,000 in service charges paid to the

Kentucky Commercial Mobile Radio Service Emergency Telecommunications Board ("CMRS Board") on prepaid wireless service from 2003 to 2005. We affirm for the reasons stated herein.

**FACTS**

In 2020, this Court reversed the Franklin Circuit Court's order dismissing T-Mobile's civil action for a refund of the CMRS service charges paid on prepaid wireless service from 2003 until 2005. The Franklin Circuit Court had concluded it lacked subject matter jurisdiction over T-Mobile's refund request because it viewed the CMRS service charge as a tax rather than a fee. So, it reversed an order of the Kentucky Board of Tax Appeals ("KBTA") dismissing T-Mobile's administrative appeal and remanded the case for further proceedings before the Kentucky Claims Commission (which was then handling administrative tax appeals).

Upon appeal of the trial court's dismissal of the civil action, we determined that the service charge at issue was a fee rather than a tax and that the Franklin Circuit Court had subject matter jurisdiction over the dispute. But since neither the trial court nor the KBTA had previously reached the merits of the

refund request, we declined to address whether T-Mobile was entitled to a refund and we remanded the case to the trial court for further proceedings.[1]

Upon remand to the trial court, both parties filed motions for summary judgment in their favor. T-Mobile argued it was entitled to a common law refund of the over $600,000 in dispute and to interest on this amount. The CMRS Board contended T-Mobile was not entitled to a common law refund. It also argued in the alternative that the statute of limitations barred a refund of most of the service charges at issue.

Following briefing and oral argument, the trial court entered an order granting the CMRS Board's motion and denying T-Mobile's motion. The order further declared that the trial court's decision was final and appealable and that there was no just cause for delay.

T-Mobile filed a timely appeal. It contends that it is entitled to a common law refund, that its claims are not time-barred, and that it is also entitled to interest. We disagree. Further facts will be discussed as necessary to resolve this appeal.

---

[1] *See Kentucky Commercial Mobile Radio Service Emergency Telecommunications Board v. T-Mobile South LLC*, No. 2018-CA-001614-MR, 2020 WL 4514940 (Ky. App. Jul. 10, 2020).

# ANALYSIS

## Standard of Review

We review the trial court's resolution of the issues *de novo.* The relevant facts are undisputed. Therefore, since the trial court resolved purely legal issues in ruling on the parties' cross-motions for summary judgment, we apply the non-deferential *de novo* standard of review. *Majestic Oaks Homeowners Association, Inc. v. Majestic Oaks Farms, Inc.*, 530 S.W.3d 435, 438 (Ky. 2017).

**Trial Court Did Not Err in Ruling T-Mobile Was Not Entitled to a Common Law Refund Under Undisputed Facts Here**

### 1. Discussion of Common Law Refund in *Virgin Mobile* was Dicta

T-Mobile relies principally on *Virgin Mobile U.S.A., L.P v. Commonwealth ex rel. Commercial Mobile Radio Service Telecommunications Board*, 448 S.W.3d 241 (Ky. 2014), and *City of Covington v. Powell*, 59 Ky. 226 (1859). In its appellant brief, citing *Virgin Mobile*, 448 S.W.3d at 251 and quoting *City of Covington*, 59 Ky. at 228, T-Mobile contends that the holdings in both *Virgin Mobile* and *City of Covington* confirm the availability of a common law refund to T-Mobile here because T-Mobile mistakenly paid a fee that was not owed.

Like the trial court, we reject this contention in part because our Supreme Court's discussion of common law refund issues in *Virgin Mobile* was dicta. As the trial court here noted, *Virgin Mobile* resolved whether T-Mobile and

-4-

other providers were required to collect and remit CMRS service charges for prepaid wireless service during the time period at issue, but it did not resolve any issue about how any provider other than Virgin Mobile should seek relief via a common law refund. Nor did *Virgin Mobile* explicitly hold that any provider was entitled to a common law refund based solely on mistakenly paying a fee that was not actually owed.

Our Supreme Court noted that Virgin Mobile had quoted the following language from *City of Covington* in its appellant brief:

> It may now be regarded as well settled in this State that when money has been paid through a clear and palpable mistake of law or fact, essentially affecting the rights of the parties, which in law, honor, or conscience was not due and payable, and which ought not to be retained by the party to whom it was paid, it may be recoverd [sic] back.

*Virgin Mobile*, 448 S.W.3d at 251 (quoting *City of Covington*, 59 Ky. at 226). And the Court stated that it did not disagree with this "venerable principle" **or with other cases** cited by Virgin Mobile.[2] But our Supreme Court also clearly held that refund cases did not apply because Virgin Mobile was not seeking a refund of

---

[2] Virgin Mobile's appellant brief is available on Westlaw at 2013 WL 8610365. Virgin Mobile cited therein the following cases for its argument that it was entitled to a refund under common law principles: *City of Covington*, 59 Ky. at 226; *Inland Container Corp. v. Mason Cnty.*, 6 S.W.3d 374 (Ky. 1999); *Great Atlantic & Pacific Tea Co. v. City of Lexington*, 256 Ky. 595, 76 S.W.2d 894 (1934); *Barnes v. Stearns Coal & Lumber Co.*, 295 Ky. 812, 175 S.W.2d 498 (1943); and *Maximum Mach. Co., Inc. v. City of Shepherdsville*, 17 S.W.3d 890 (Ky. 2000).

money already paid, but was seeking to justify its underpayment of service charges incurred later:

> We do not disagree with the venerable principle cited in *City of Covington* or in the other cases relied upon by Virgin. We find them inapplicable here because they all involve the right to a refund, which as noted above, is not the issue here. Virgin does not assert these principles in support of an action for a refund of money mistakenly paid between 2002 and May 2005. Instead, Virgin is asserting them as a justification for its underpayment of the CMRS obligations that came due after July 12, 2006. Had Virgin paid those obligations when due, and in a timely fashion filed an action for a refund of the funds it had mistakenly thought it owed, the cited principles and the equities they embody may have favored Virgin's position. But that is not the case before us.

*Id*. As the trial court in its opinion and order in the present case aptly stated:

> The [Kentucky Supreme] Court mere[ly] posed a hypothetical question, in *dicta*, that raised the *possibility* that the equities might be different [if] Virgin Mobile had pursued a different legal strategy. . . . The [Kentucky Supreme] Court's use of conditional verbs (e.g., "had Virgin paid those obligations"; "may have favored Virgin's position) along with its direct statement of "that is not the case before us" make it clear that it did not intend to validate any and all common law refund claims that arose in connection with parties' remittance of CMRS service charges for prepaid wireless services. Consequently, it would be misplaced for this Court to rely upon hypothetical conclusions of law as a basis for a holding in this case.

In its reply brief, T-Mobile contends that even if *Virgin Mobile*'s discussion of common law refund issues is dicta, it is judicial dicta aimed at

-6-

reducing unnecessary litigation. *See Franklin Cnty. Distilling Co. v. Crowder*, 305 Ky. 84, 88, 202 S.W.2d 1015, 1018 (1947). And it suggests our Supreme Court intended to reduce unnecessary litigation over whether providers who paid CMRS service charges on prepaid wireless service were entitled to common law refunds by indicating that they should receive such refunds.

But we cannot say with certainty what our Supreme Court intended to do by discussing common law refund precedent in what is indisputably dicta. Possibly, our Supreme Court intended to suggest that common law refunds might be available as a remedy to providers who paid CMRS service charges on prepaid wireless service during the relevant time period before our Supreme Court determined they were not obligated to do so. But as the CMRS Board suggests in its brief, the fact that common law refunds may be available as a remedy to some providers who made the payments at issue does not mean that all of these providers are entitled to common law refunds. Instead, such determinations must be made in light of controlling precedent, including *City of Covington*, but not excluding other precedent on the same issue.

*City of Covington* **Is Not Sole Controlling Authority on Common Law Refunds**

Similar to the trial court in its opinion and order, we reject any argument that "*City of Covington* establishes a stand-alone test for a common law refund where money has been paid due to a mistake of law or fact" or that our

-7-

Supreme Court indicated in *Virgin Mobile* that *City of Covington* was the sole controlling case governing common law refunds. Instead, we construe *City of Covington* along with other cases developing Kentucky common law refund principles. After all, our Supreme Court noted it also did not disagree with other cases cited by Virgin Mobile to support a refund before stating the question of a refund was not even properly before it. *See Virgin Mobile*, 448 S.W.3d at 251.

As suggested by our Supreme Court, *City of Covington* expresses a "venerable principle," *i.e.*, "when money has been paid through a clear and palpable mistake of law or fact, essentially affecting the rights of the parties, which in law, honor, or conscience was not due and payable, and which ought not to be retained by the party to whom it was paid, it may be recoverd [sic] back." *See Virgin Mobile*, 448 S.W.3d at 251 (citing *City of Covington*, 59 Ky. at 226). Yet this statement, by itself, does not express a clear and complete test about when a refund is due under the common law. It does not describe, for example, how one determines when a payment for something, not actually due and payable, should or should not "be retained by the party to whom it was paid . . . ." But controlling precedent rendered after *City of Covington* provides more guidance about the application of common law refund principles.

-8-

**Recent Precedent Limits Common Law Tax Refunds to Situations Involving Involuntary Payments Based on Invalid Legislation or Taxing Authority Misrepresentation**

Recent precedent states that tax refunds are authorized under the common law in two situations. The first situation is: "when the taxing statute or regulation is invalid and the tax payments were submitted involuntarily[.]" The second situation is: "when the taxing authority has engaged in misrepresentation." *Inland Container Corp.*, 6 S.W.3d at 377; *Maximum Mach. Co.*, 17 S.W.3d at 892.

Of course, these recent precedents concerned taxes rather than the service charges at issue here which we concluded were fees in the prior appeal. And the CMRS Board is clearly not a taxing authority. Nonetheless, the reasoning of this recent precedent applies by analogy since the same basic types of payments are often alternately described as taxes and fees in earlier cases where similar common law refund principles are discussed. *See generally Great Atlantic*, 76 S.W.2d at 894 (request for refund of license taxes for selling cigarettes in groceries); *Spalding v. City of Lebanon*, 156 Ky. 37, 160 S.W. 751, 752 (1913) (request for refund of license fees for selling soft drinks in pharmacies).

**Longstanding Precedent Rendered After *City of Covington* Recognizes the Same Basic Requirements for Common Law Refunds of Fees as Recent Precedent about Common Law Refunds of Taxes**

For many decades, Kentucky courts have focused on issues about the validity of legislation, voluntariness of payment, and any misrepresentation by the

government or its agents when considering whether one is entitled to a common law refund from a governmental entity. For example, the Kentucky high court stated in its 1934 opinion in *Great Atlantic*, 76 S.W.2d at 895-96:

> Money paid without consideration and which in law, honor, or good conscience was not payable ought in law, honor, and good conscience to be recoverable, and that rule applicable to transactions between individuals should be generally made applicable to municipalities and other governments. Only very compelling reasons of public policy relieve the state and its subdivisions from being required to live up to the same moral standards demanded of individuals and to repay taxes collected without authority of a valid law. . . .

> On the other hand, this court is committed to the doctrine, at least as related to the commonwealth, that those equitable rules may not be invoked to compel a refund of taxes voluntarily paid to an officer of the law charged with the duty of collecting the tax. . . .

> Here there was actual misrepresentation. . . .

> One who has intentionally deceived another to his prejudice will not be heard to say in defense of the charge of fraud that the innocent party ought not to have trusted him, or was guilty of negligence in so doing.

In *Great Atlantic*, a grocery company official asked a city clerk whether a special license was required to sell cigarettes and the city clerk replied there was a cost of $35 per store. The city clerk and other city officials then continued to collect the cigarette license payments (along with grocery license payments) and to deposit them in the city treasury for a few years. Later, however, the city treasurer

-10-

returned a payment, advising there was no license payment required for selling cigarettes in grocery stores. The Kentucky court noted there was no actual ordinance in existence requiring payment for an additional license to sell cigarettes in grocery stores during the years at issue. 76 S.W.2d at 894.

Despite arguments that the grocery company should have independently investigated to see if it was obligated to pay for an additional license to sell cigarettes, the Kentucky court concluded the grocery company was entitled to a refund in light of evidence of actual misrepresentation by city officials and evidence that the payments were not voluntary but compulsory. *Id*. at 895-96.

The Kentucky court also cited authority indicating that payments were not voluntary but compulsory "whenever they are collectible by summary process or fine and imprisonment[.]" And it noted the parties' stipulation that "the company knew that those who conducted a business in the city on which a license tax was imposed without paying the tax were subject to the imposition of fines and other penalties, and that the company believed if it failed to pay such licenses it would be liable to those penalties." *Id*. at 896.

Even farther back, in 1913, the Kentucky high court stated the Kentucky rule allowing for possible recovery of payments made based on mistake of fact or law had been modified when applied to governmental entities collecting undue payments to only permit refunds of involuntary payments:

One of the modifications to this Kentucky rule, however, is that illegal taxes paid voluntarily may not be recovered; but, if they are paid under compulsion which exists whenever they are collectible by summary process of fine and imprisonment, they come within the general rule and may be recovered. When taxes can be collected by suit only, and are voluntarily paid, an action to recover them cannot be maintained.

*Spalding*, 160 S.W. at 753.[3]

The Kentucky high court concluded that involuntary payment was shown under the facts of that case. *Id*. The plaintiffs/appellants had sought refunds of license fees paid to sell soft drinks at drugstores under a void ordinance for which one could be fined for non-payment and which even resulted in an arrest:

Section 7 of the ordinance provided a fine of $5 for any person who should violate its provisions by selling soft drinks without the license; and, on one occasion, the plaintiffs having failed to pay the quarterly installment of their license when due, one of them was arrested, and, upon his pleading guilty, a fine of $5 was assessed against him and paid.

*Id*. at 752-53.

Ultimately the Kentucky court reversed the trial court's judgment in the city's favor and indicated the appellants should recover the money paid after determining the ordinance was invalid, the payment was involuntary, and the appellants essentially received no consideration for their payments. *Id*. at 753-54.

---

[3] The Kentucky court cited, *inter alia*, *City of Covington*, 59 Ky. at 228, in its discussion of prior common law refund precedent in *Spalding*, 160 S.W. at 754.

-12-

Thus, the Kentucky court determined that a common law refund of the license fees paid was authorized in light of conditions showing both invalid authority for requiring the payment and involuntary payment – which is consistent with the requirements for obtaining a common law refund of taxes in recent precedent such as *Inland Container*, 6 S.W.3d at 377.

Similarly, in *Ziedman & Pollie, Inc. v. City of Ashland*, 244 Ky. 279, 50 S.W.2d 557 (1932), the Kentucky court reversed a judgment in favor of the city on the appellants' request for a refund of carnival license fees. The court determined the ordinance imposing the fees was void. *Id*. at 559. It quoted the rule stated in *Spalding*, 160 S.W. at 753, about not permitting refunds of voluntary payments of illegal taxes but recognizing that payments were not voluntary "[if] collectible by summary process of fine and imprisonment[.]" And it concluded the payment of the fees at issue was involuntary, *Ziedman*, 50 S.W.2d at 560, after previously noting one would be subject to fines of $100 per day for operating a carnival without paying the fees. *See id*. at 557. This is also consistent with common law refund requirements in recent precedent such as *Inland Container*.

So, in light of long-standing precedent regarding common law refunds of fees and analogous requirements for common law tax refunds in recent precedent, we conclude that for one to be entitled to a common law refund of fees paid to a governmental entity based on mistake of law or fact, there must be either

-13-

1) both invalid authority requiring the payment and involuntary payment, or 2) misrepresentation by the government entity.

To the extent that prior precedent such as *City of Covington* or *Bruner v. Town of Stanton*[4] broadly authorizes common law refunds of moneys mistakenly paid to governmental entities without requiring a showing of involuntary payment or misrepresentation, such precedent has long been implicitly modified by controlling precedent recognizing additional requirements in this context including *Great Atlantic* and *Spalding*.

**T-Mobile Cannot Show Common Law Refund Requirements Such as Involuntary Payments or Misrepresentation by the CMRS Board**

T-Mobile argues it fulfilled the requirements for a common law refund set forth in *Inland Container* and/or other precedent. We disagree. T-Mobile cannot show involuntary payments or misrepresentation based on the

---

[4] *See Bruner v. Town of Stanton*, 102 Ky. 459, 43 S.W. 411, 412 (1897) ("It has been held that, even where the licensee knew the tax imposed was illegal, and paid it, yet, if there were circumstances of oppression connected with the transaction, the money beyond the amount authorized to be collected might be recovered . . . . The general rule is well settled, and is alike applicable to transactions between an individual and a municipality as between individuals alone, that where money has been paid through a clear and palpable mistake of law or fact essentially affecting the right of the parties, which in law, honor, or conscience was not due and payable, and which ought not to be retained by the party to whom it is paid, it may be recovered back."). Ultimately, however, the Kentucky court in *Bruner* determined "no recovery can be had, because at the time the money is alleged to have been paid, namely, June 5, 1893, the town authorities were authorized to enforce the collection complained of." *Id.*

undisputed facts here – regardless of any questions about the validity of controlling statutes or the CMRS Board's interpretation of the statutes.

Technically, our Supreme Court did not declare invalid then-applicable statutes requiring the payment of CMRS service charges in *Virgin Mobile*, although it interpreted these controlling statutes as not requiring that **providers** of prepaid wireless service such as T-Mobile were responsible for collecting or paying CMRS service charges on prepaid wireless services. *Virgin Mobile*, 448 S.W.3d at 251. But even assuming a lack of valid authority for requiring it to pay the CMRS service charges for the time at issue, T-Mobile cannot show that its payments were involuntary in the sense defined by long-standing precedent such as *Spalding* or *Great Atlantic*. The CMRS service charge fees were not collectible by summary process of fine or imprisonment. Instead, unpaid CMRS service charge fees would have to be collected by suit – such as the collection action filed against Virgin Mobile. *See* KRS[5] 65.7635(5).

Not only can T-Mobile not show that its payments were involuntary, but it cannot show actual, intentional misrepresentation. *See Great Atlantic*, 76 S.W.2d at 895-96. Unlike *Great Atlantic*, this is not a case in which there was no legislation actually requiring the payment of a fee or tax despite government officials' representations to the contrary. Instead, then-existing statutes required

---

[5] Kentucky Revised Statutes.

-15-

the payment of CMRS service charges and there was simply a debate over whether providers of prepaid wireless service were obligated to collect or remit such charges themselves.

The CMRS Board, through its officials and counsel, simply stated in correspondence that it **took the position** that service providers were responsible for collecting CMRS service charges on prepaid wireless service for the time at issue – in response to T-Mobile's and other providers' questions about whether they were required to collect and remit these charges. The CMRS Board did not state an untruth, as it merely stated its interpretation of governing statutes in response to those offering different interpretations before our Supreme Court resolved the controversy in *Virgin Mobile*.

**Other Authority Cited by T-Mobile Does Not Support Entitlement to Common Law Refund Under Undisputed Facts Here**

T-Mobile argues it is entitled to a refund based on alleged similarities to *Barnes*, 175 S.W.2d 498. In some ways, this case is similar to *Barnes* – such as the payments at issue being placed in specialized accounts rather than the general treasury for the Commonwealth or a municipality. *See id*. at 499-500. But notably distinct from the present case, statutory provisions authorized refunds of the unemployment insurance-type payments at issue in *Barnes* regardless of whether there were any showing payments were involuntary. *See id*. at 500 (referring to statute providing that refunds of payments at issue be paid out of a particular

-16-

account and rejecting argument that statute expressly providing for refunds and adjustments only applied to involuntary payments). So, *Barnes* essentially involved issues of entitlement to a refund pursuant to a statute which did not require the payments to be refunded to have been made involuntarily. There is no such statute here to eliminate the involuntariness requirement for T-Mobile to obtain a common law refund.

Thus, we do not perceive *Barnes* as showing T-Mobile's entitlement to a common law refund under the facts here. Instead, based upon the clear requirements developed in Kentucky precedent for common law refunds, T-Mobile was not entitled to such a refund.

In sum, based upon our review of Kentucky precedent, we discern no error in the trial court's conclusion that T-Mobile was not entitled to a common law refund under the undisputed facts here. Furthermore, given the clear lack of entitlement to a common law refund under the facts here, it is not necessary for us to address arguments concerning the statute of limitations or interest or any other issues raised in the briefs but not discussed herein.

## CONCLUSION

For the foregoing reasons, we AFFIRM the Franklin Circuit Court's judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Mark A. Lloyd
Bailey Roese
Stephanie M. Bruns
Louisville, Kentucky

BRIEF FOR APPELLEE:

Shawn D. Chapman
Jacob C. Walbourn
Frankfort, Kentucky